## W. M. LACY ET AL. v. SAM ROLLINS ET AL.

### No. 2785.

1. **Mortgage of Homestead by Unmarried Man.**—A mortgage of his homestead by a widower was legal, he having no minor children, and residing with a son-in-law upon the premises, paying no board and receiving no rent.

2. **Same.**—The owner of a homestead if unmarried can convey it at will, and can encumber it with a mortgage with power to sell.

3. **Undue Influence.**—See allegations held insufficient in an attack upon a mortgage upon the ground of undue influence exercised upon the mortgagor in absence of fraud or deception.

4. **Securities—Distinct Bonds.**—While the general rule is that a security taken by one of several sureties to indemnify himself against loss on account of his suretyship enures to the benefit of his cosureties upon the obligation, the rule does not extend to the benefit of sureties upon another separate and distinct bond or obligation made by principal.

5. **Same.**—A county treasurer executed two official bonds, one the general official bond, the other to secure the school funds. He executed a mortgage in favor of the sureties upon the former. *Held*, that such security did not enure to the benefit of the sureties upon the bond for the school funds.

APPEAL from Anderson. Tried below before Hon. F. A. Williams. The opinion states the case.

*Gregg & Reeves,* for appellants.—An unmarried man who has no family of which he is the head can legally create a mortgage or other lien on property used as a homestead, for purposes other than such as are specified in the Constitution. Astugueville v. Loustaunau, 61 Texas, 233; Kilgore v. Graves, 2 Ct. App. C. C., sec. 412.

*L. S. Hays* and *J. R. Burnett,* for appellees. — 1. A mortgage of a homestead to secure a debt other than for the purchase money or for improvements thereon is void.

2. The facts alleged were sufficient to show that the alleged preference of defendants Lacy and Gregg was not obtained openly and bona fide, and that it was at least legally or constructively fraudulent as against plaintiffs.

3. The security should be for the benefit of all the sureties upon both bonds. Glasscock v. Hamilton, 62 Texas, 144; Dering v. Winchelsea, I. L. C. in Eq., 120; Brandt on Sure., sec. 222; Young v. Shunk, 30 Minn., 503; 2 Pom. Eq. Jur., 1053; Carter v. Carter, 5 Texas, 93; McMahan v. Rice, 16 Texas, 335; Story's Eq. Pl., secs. 251, 252; Cummings v. Thompson, 18 Minn., 246; Cowen v. Toole, 31 Ia., 513; Singleton v. Scott, 11 Ia., 589; Fox v. Webster, 46 Mo., 181.

GAINES, ASSOCIATE JUSTICE.—The following is the statement of this case made in the brief of appellants:

" On November 12, 1886, John W. Richardson, as the county treasurer of Anderson County, executed his general bond in ten thousand dollars, upon which the appellants were sureties, and his school bond in forty thousand dollars, upon which the appellees were sureties. On December 17, 1888, it was discovered that Richardson had defaulted upon his general bond for $3000, and upon his school bond for $6000. On said date appellants Lacy and Gregg, acting for themselves and their cosureties upon the general bond, obtained from Richardson a mortgage with power of sale to indemnify them against loss upon said bond. This mortgage included two tracts of land, designated in plaintiffs' petition as, first, Richardson's homestead, and second, as the " Wasp Nest."

" On December 19, 1888, said Richardson sold to the sureties upon both his bonds certain property, including the two tracts of land mortgaged to Lacy and Gregg, and at the same time appellants and appellees entered into a written contract to the effect that appellants by joining in such purchase did not surrender any prior rights acquired by them under the mortgage to Lacy and Gregg, and that appellees did not recognize any such prior right, but reserved the right to attack the same upon any other ground except upon the ground of forfeiture of same by reason of appellants joining in said purchase.

" On March 6, 1889, appellees filed suit against appellants to cancel

and annul the mortgage to Lacy and Gregg upon the grounds that the same was obtained by reason of undue influence exercised over Richardson, and also because one of the tracts of land was the homestead of Richardson and could not be mortgaged by him, and upon the ground that it was inequitable that one set of bondsmen should obtain a preference over the other set.

"The cause was submitted to the court without jury, and judgment rendered annulling the mortgage as to the 'homestead' tract, and sustaining it as to the 'Wasp Nest' tract. Both parties excepted and gave notice of appeal, and the defendants within the required time filed an appeal bond and assignment of errors. The plaintiffs afterwards filed a petition for writ of error, bond, and assignment of errors, and both branches of the case are brought up in one transcript."

The appellees impliedly concede that this statement is correct.

Appellants assign as error the ruling of the court which holds that the mortgage upon the homestead of Richardson was void. The mortgagor had been a married man and had resided with his wife upon the tract of land now under consideration. At the time the mortgage was executed his wife was dead, but he still resided upon the property with a married daughter and her husband. He had no minor children nor unmarried daughters. His son-in-law and daughter kept the house and he boarded with them. He paid them no board and they paid him no rent. The opinion of the court below seems to have been that since the land was the homestead of Richardson, and was as such protected from forced sale, he could not mortgage it, although he was the sole surviving constituent of the family recognized by the Constitution.

The correctness of the court's ruling depends upon the proper construction of section 50 of article 16 of our Constitution. So much of that section as relates to this question reads as follows: "The homestead of a family shall be and is hereby protected from forced sale for the payment of all debts. * * * Nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid except for the purchase money thereof or improvements thereon as hereinbefore provided, whether such mortgage, trust deed, or other lien shall have been created by the husband alone or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

The provision in reference to mortgages and other liens is not found in any previous Constitution, and the construction had been that the mere exemption from forced sale did not preclude the husband and wife from giving a valid mortgage upon the homestead, provided it contained a power of sale and did not require the interposition of the courts to aid in its enforcement. Sampson v. Williamson, 6 Texas, 102; Jordan v.

Peak, 38 Texas, 429. The ruling was unsatisfactory to many of the legal profession, and the framers of the existing Constitution evidently considered that it was not in accordance with the general policy of the exemption laws to permit it to be encumbered by a deed in trust or mortgage with a power of sale. It is clear, therefore, that the object of the provision in question was to protect the wife against a sale of the homestead, even where she and her husband had given a power of sale to secure a debt and she had privily acknowledged the instrument under the forms prescribed by the statute for the conveyance of the homestead or of her separate property. The restrictions upon the alienation of the homestead by the husband by voluntary conveyance in our former Constitutions were solely for her benefit. The owner, "if a married man," was not permitted to convey without consent of the wife. If not married he was not disabled to sell or encumber. Substantially the same provision as to a sale is carried into the present Constitution, and it can not be doubted that the owner of a homestead, if unmarried, can convey it at will.

We think it reasonable, therefore, to conclude that it was not intended by the provision in question to prohibit a single man from giving a mortgage with a power of sale upon his homestead, provided he should see proper to do so. It is true that a portion of the language of the provision is sufficiently broad to indicate that the intention was to prohibit the owner of a homestead from giving a mortgage upon it in any case except for the special purposes named in the previous part of the section. The words "no mortgage, trust deed, or other lien on the homestead shall ever be valid except," etc., are not only general but very emphatic, and probably should be construed to prohibit an encumbrance by a single man did not the subsequent language show what was in the minds of the framers of the Constitution when the section was adopted. The subsequent words, "whether such mortgage or trust deed or other lien shall have been created by the husband alone or together with his wife," show clearly that encumbrances of the homestead by married men were contemplated in making the provision. We think the language should be construed as if it read "No mortgage, trust deed, or other lien created by a husband, whether alone or together with his wife, shall ever be valid except," etc. This construction comes as near meeting the literal terms of the statute as any that can be given. The policy of the provision, in our opinion, favors the construction we have placed upon it. A wife who may be unwilling to consent to a conveyance of the homestead might be induced to encumber it by the husband holding out specious representations of his ability and purpose to discharge the lien, and thus her homestead might be sold for debt, contrary to the established policy of the laws of this State. Hence a prohibition upon her power to do this was necessary for her protection. On the other hand, however, our laws left

persons *sui juris* and unmarried free to make such voluntary disposition as they saw proper of their own property. They have undertaken to guard the wife, so far as the disposition of the homestead is concerned, against the action and influence of the husband; but have never attempted to protect single men against the voluntary encumbrance or alienation of their property, although it is not subject to forced sale. We conclude that the court erred in holding the deed in trust on the homestead in controversy void, and for this error the judgment must be reversed.

The plaintiffs below also sought to set aside the deed in trust upon both parcels of land on the ground that they were obtained by undue influence. The following is the substance of the allegations in their petition in reference to this matter, as taken from their brief:

"After alleging the defalcation and insolvency of Richardson and the liability of all the bondsmen, etc., plaintiffs alleged that they had no personal knowledge of the facts constituting fraud and undue influence, but alleged on information and belief and charged to be true that at the time of the execution of the mortgage Richardson, who was aged and infirm, being about sixty years old, was importuned by defendants to execute the mortgage; that the mortgage was not executed voluntarily, but was the result of undue influence exerted over him by defendants; that he was then in a disturbed and distracted state of mind over the discovery and publicity of his defalcations, and while in this condition was prevailed on by defendants to sign the mortgage, which was written by defendant Gregg, who is an attorney at law, and was signed in his office; that it was not the intention of Richardson to give any preference to defendants over his other sureties, but it was his intention and desire, as his deed subsequently executed shows, to make over all his property, including his homestead, for the benefit of all his sureties, and such intention and desire of Richardson was well known to defendants at the time they procured the mortgage from him, and that defendants knew at the time the mortgage was signed that Richardson was insolvent and that all the sureties had become liable on both bonds."

The court sustained exceptions to these allegations, and in this we think there was no error. The facts stated do not show such undue influence as will authorize the setting aside of a conveyance; and while it is alleged that the mortgagor did not intend to give a preference to defendants, it is not alleged that any fraud or deception was practiced upon him.

· Appellees in their cross-assignments of error also complain that the court erred in refusing to hold that the mortgage did not enure to the benefit of the sureties upon both bonds. It is a general rule that a security taken by one surety to indemnify himself against loss on account of his suretyship enures to the benefit alike of all the sureties upon the obligation. Glasscock v. Hamilton, 62 Texas, 143.

This rule is well supported upon principle, because there is an implied contract among cosureties that they will bear equally the loss which may result by reason of the default of their principal. Hence it is but equitable to hold that whatever the principal pays, either directly to the debtor' or by way of indemnity or security of one of the sureties, should be credited to the whole debt and should enure to the benefit of all alike. Even where different and successive bonds have been given to secure the same liability the sureties upon both are liable to contribute to each other, although as between the sureties upon the one bond and those on the other there is no contract either express or implied. Brandt on Sure., secs. 222, 234, *et seq.*

If one of the bonds in this case had been given under the requirements of the law as an addititional obligation to secure the performance of the same duty on part of the principal, the rule would have applied. But such is not the case. The one is the county treasurer's ordinary bond; the other is his special bond required by law to be given for the safe-keeping and disbursement of the school fund. They are given to secure the performance by the principal of similar but distinct duties. By signing the general bond of the county treasurer the sureties thereon took upon themselves no responsibility for the available school fund which should come into his hands; nor in signing the school bond did the sureties upon that bond assume any liability whatever for the other funds. To our minds the obligations of the two sets of sureties were as distinct as they would have been if the county treasurer and treasurer of the school fund had been different officers. We conclude that the cross-assignments of error are not well taken.

For the error pointed out the judgment is reversed and here rendered for appellants W. M. Lacy and others upon the whole case.

*Reversed and rendered.*

Delivered October 22, 1889.