| 76 | 13 |
| 79 | 600 |

---

## ALBERT WATTS, GUARDIAN, v. C. R. MILLER.
### No. 2782.

**1. Surviving Husband May Sell Homestead.** — After the death of his wife the husband executed a mortgage with power to sell for the homestead house and lot. One child, a minor, survived the mother. The mortgage was in part to secure a community debt. The house and lot were sold under the trust deed. Subsequent to the sale letters of guardianship were duly issued upon the estate of the minor child, and of administration upon that of the wife. The house and lot was set apart as exempt property. Subsequently sale was ordered and sale was made to make up the want of exempt property not owned by his parents at his mother's death. In controversy between the purchaser under the mortgage and the purchaser under the order of the probate court, *held:*

1. The husband may sell or encumber his community homestead for payment of community debts.

2. The County Court has no power to set apart to the child the homestead of his parents upon the mother's death.

**2. Cases Adhered to.**—Ashe v. Yungst, 65 Texas, 631, and Fagan v. McWhirter, 71 Texas, 567, adhered to.

**3. Presumption as to Community Property.**—Where property is bought soon after the marriage there is no presumption that it was paid for with community funds.

APPEAL from Polk.   Tried below before Hon. L. B. Hightower. The opinion states the case.

*James E. Hill,* for appellant.—1.  The County Court in its probate proceedings is a court of general jurisdiction.   Its actions within the scope of its powers are *in rem,* to which all the world are parties.   The County Court of Polk County, in the succession of Addie Watts, deceased, having by decree set aside the property involved in this suit to the minor Dick Watts as exempt property, such adjudication is conclusive unless directly attacked, and this suit is not such attack.   Const., art. 5, sec. 16;  Rev. Stats., art. 1789;  Pelham v. Murray, 64 Texas, 477;  Martin v. Robinson, 67 Texas, 368;  Freem. on Void Jud. Sales, sec. 15;  Grinnon v. Astor, 2 How., 319;  11 Fed. Dec., sec. 497.

2.   The trial court erred in its general charge in not presenting the law, that upon the death of Addie Watts, if the estate of A. B. Watts, her husband, was then insolvent, the property in question being the homestead of A. B. Watts and Addie Watts, the title to one-half of it descended to and vested in their minor child, Dick Watts, whether the property was the separate estate of A. B. Watts 'or the community estate of A. B. Watts and Addie Watts.   Green v. Crow, 17 Texas, 180;  Runnels v. Runnels, 27 Texas, 515;  Reeves v. Petty, 44 Texas, 253, 254.

*Crosson & Holshousen,* for appellee.—1.  County Court has no jurisdiction to try questions of title.  Const. Texas, art. 5, secs. 8 and 16;  Mayo v. Tudor's Heirs, 74 Texas, 471.

2.   In case of death of wife, husband surviving, County Court has no jurisdiction to set apart to minors homestead, exempt property, or make an allowance in lieu of exempt property, or for year's support.   Ashe v. Yungst, 65 Texas, 638;  Rev. Stats., arts. 1993–95.

3.   Appellee's suit having been filed in District Court, County Court had no authority to determine appellee's rights in the property, appellee being no party to the proceedings in the County Court.

4.   The homestead was his separate property and he had the right to sell.   If any portion thereof was community property, then if there were community debts he had the right to sell.   Fagan v. McWhirter, 71 Texas, 567;  Ashe v. Yungst, 65 Texas, 631.

5.   Homestead rights do not descend to children, and the husband, if unmarried, has the right to convey.  Fagan v. McWhirter, 71 Texas, 567;  Ashe v. Yungst, 65 Texas, 631;  Lacy v. Rollins, 74 Texas, 566;  Kilgore v. Graves' Heirs, 2 Ct. App. C. C., sec. 412;  Sanger's Heirs v. Moody, 60 Texas, 99.

GAINES, ASSOCIATE JUSTICE.—This was a suit brought by appellee against appellant, as guardian of Dick Watts, a minor, to recover a house

and lot in the town of Livingston. A. B. Watts, the father of Dick Watts, is the common source of title. In October, 1881, A. B. Watts purchased the lot in controversy for the sum of $50. He paid $25 at the time of the contract, but received no deed. He bought lumber and erected a house, and in December, 1881, he married and immediately occupied the premises as the homestead of himself and wife. After his marriage the house was finished and other improvements made. In January, 1882, he paid the balance of the purchase money and received a deed from his vendor. Whether this last payment was made in money earned before or after the marriage the evidence does not show. In November, 1882, his wife died, leaving Dick Watts as the sole surviving issue of the marriage. After the death of his wife, A. B. Watts executed a deed of trust with a power of sale upon the lot, in order to secure the payment of an indebtedness due to appellee. Appellee testified that $20 of this indebtedness existed at the date of the death of his wife. This testimony was uncontradicted, although A. B. Watts himself was placed upon the stand by appellant and examined in his behalf. The property was sold under the power granted in the deed in trust and the appellee became the purchaser. Subsequent to the execution of the mortgage Watts left the county, and letters of administration were taken out in the County Court upon his wife's estate. In course of the proceedings in that administration the property in controversy was set apart to Dick Watts as the homestead of his mother. The court also made the minor an allowance in lieu of exempt property not found on hand belonging to his mother's estate, and also an allowance in lieu of one year's supply of provisions, and ordered the sale of property to pay the same. The property in controversy was sold under this order and bought by one J. E. Hill, who conveyed it to the guardian of the minor. The case was submitted to a jury, who rendered a judgment for plaintiff. From the judgment upon that verdict Albert Watts, as guardian of Dick Watts, appeals. Such being the facts of the case, we deem it unnecessary to consider the assignments of error in detail.

In Ashe v. Yungst, 65 Texas, 631, it was held that the surviving husband has the power to sell the homestead of himself and his deceased wife, it being community property, for the purpose of paying debts existing against the community estate, although she leave minor children surviving and the estate be insolvent. That case arose under the present Constitution and laws. In Fagan v. McWhirter, 71 Texas, 567, that doctrine was distinctly reaffirmed. The question of the power of the husband in such a case can no longer be considered an open one in this court. In Lacy v. Rollins, 74 Texas, 566, we held that section 50 of article 16 of the Constitution did not prohibit a single man from giving a mortgage upon his homestead; and in Smith v. Von Hutton, decided at the present term (75 Texas, 625), the doctrine was again asserted that

the constitutional prohibition only applied to married men. Since A. B. Watts could have sold the homestead, although it may have been in part community property, to pay so much of Miller's debt as was a charge against the community estate, we are of opinion that he could give a deed in trust upon it for the same purpose, and that a sale by the trustee in accordance with the terms of the instrument passed the title to the property.

It is insisted, however, that the action of the County Court in setting apart the property in controversy to the minor Dick Watts is conclusive upon the parties to this suit until set aside in a proceeding brought directly for that purpose. The evidence leaves no doubt that at least one-half of the homestead was the separate estate of the husband, and we know of no law which authorizes a County Court to set apart to the minor child of a deceased wife the homestead of the surviving husband, or which in such a case authorizes a sale of the homestead to make up an allowance given in lieu of exempt property. An order of the County Court rendered without authority of law is a nullity, and may be so declared in any proceeding in which it is called in question. Besides, the decrees of the County Court setting apart this property and then ordering its sale, etc., were made long after the property was sold under the deed in trust.

We have discussed the case upon the theory that there may have been some community interest belonging jointly to Watts and his wife in the property in controversy. The evidence leaves it doubtful whether such interest existed or not. The court below charged the jury in effect that if such interest existed, they should find for appellant one-half of such interest, but that if they found that it was wholly the separate property of A. B. Watts, they should find for appellee. The verdict was for appellee for the entire interest of Watts and his wife in the property, and in view of the charge of the court, shows that the jury must have found it to be the separate property of the husband.

It is insisted the verdict is without evidence to support it in this particular. The last $25 that was paid for the lot was paid four or five weeks after the marriage of Watts. When giving testimony in the case in behalf of defendant, he was unable to say that that money was earned after his marriage. In the case of Medlenka v. Downing, 59 Texas, 32, it was held that when land was purchased by the husband and partly paid for before marriage, and the payment of the remainder of the purchase money was made shortly after marriage, no presumption arose that the money used in making the final payment was community funds. In this view of the law it would seem that the jury were warranted in finding that the property was of the separate estate of the husband, and that the verdict should be deemed conclusive of that question. But we are of the opinion that in any aspect of the case the appellee was entitled to

a verdict, and hence should have an affirmance of the judgment. Therefore we need not pass upon that question.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered February 4, 1890.