MARY ELIZA GRAHAM, Appellant, *v.* LOUIS STERN et al., Respondents.

168    517
d 77 AD 572

DEED — MEANING AND EFFECT OF WORDS "BOUNDED BY OR UPON A STREET" IN CONVEYANCE BY THE CITY OF NEW YORK. The presumption that a conveyance of land bounded by or upon a street carries the fee to the center of a street is offset, in the case of a conveyance of land by municipal authorities, by the presumption that the municipality would not part with the ownership and control of a public street once vested in it for the public benefit; and a grant of title to property, described as bounded by or upon a city street surveyed and platted upon a map of the common lands vested in the municipality of the city of New York, derived from the public authorities of the city, in the absence of any more definite description, carries only to the line of the street, inasmuch as, in legal intendment, the street was held as and should remain a public highway.

*Graham* v. *Stern,* 51 App. Div. 406, affirmed.

(Argued October 18, 1901; decided November 26, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 24, 1900, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John M. Perry* for appellant. By the deed to McKay, plaintiff's remote grantor, he became vested with the title to the southerly half of the old street which bounded lot 155 on the north. (*Bissell* v. *N. Y. C. R. R. Co.,* 23 N. Y. 61; *Wallace* v. *Fee,* 50 N. Y. 694; *K. C. F. Ins. Co.* v. *Stevens,* 87 N. Y. 287; *Matter of Ladue,* 118 N. Y. 213; *Hennessy* v. *Murdock,* 137 N. Y. 317; *Holloway* v. *Delano,* 139 N. Y. 390; *Stevens* v. *Mayor, etc.,* 84 N. Y. 296; *Sherman* v. *Kane,* 86 N. Y. 57; *City of Buffalo* v. *Pratt,* 131 N. Y. 293; *Hammond* v. *McLachlan,* 1 Sandf. 323.) Dr. Graham never conveyed his interest in the old street which bounded lot 155

on the north, in which old street the premises in question were located. (*Holloway* v. *Delano*, 139 N. Y. 390.) The descriptions contained in the deeds to and from Dr. Graham were so unambiguous as to preclude the defendants from giving evidence of surrounding circumstances to vary their, plain import. The admission of such evidence was error. (*Blackman* v. *Riley*, 138 N. Y. 324; *Armstrong* v. *Du Bois*, 90 N. Y. 95; *Muldoon* v. *Deline*, 135 N. Y. 153; *K. C. F. Ins. Co.* v. *Stevens*, 87 N. Y. 287.) The court erred in admitting in evidence the map and assessment books relating to the proceeding for opening Eighty-third street. (*Jarvis* v. *Lynch*, 91 Hun, 352; 157 N. Y. 445.) The defendant failed to prove adverse possession founded on a written instrument. (*Deering* v. *Riley*, 38 App. Div. 170; Code Civ. Pro. §§ 369, 370; Sedg. & Wait on Title to Land [2d ed.], § 747; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 574; *C. I. Co.* v. *Mayor, etc.*, 166 N. Y. 92.) The defendants failed to prove adverse possession under claim of title not written. (*Lewis* v. *N. Y. & H. R. R. Co.*, 162 N. Y. 220.) Even if the defendants had made out a *prima facie* case on their affirmative defense of adverse possession, the plaintiff would have been entitled to have that issue submitted to the jury. (*Tilson* v. *Terwilliger*, 56 N. Y. 273.) The evidence offered relative to the sale in 1851 of real estate of the widow and children of Dr. John Graham constitutes no defense to this action. (*Sweetser* v. *Davis*, 26 App. Div. 401; *Townsend* v. *Van Buskirk*, 22 App. Div. 443; 2 Phillips on Ev. 6; *Pritchard* v. *Dratt*, 32 Hun, 417; *Malloney* v. *Horan*, 49 N. Y. 116; *Matter of Valentine*, 72 N. Y. 187.)

*Julius J. Frank* for respondents. The plaintiff must recover on the strength of her own title and cannot avail herself of any weakness in the defendants' title to maintain this action. (*Roberts* v. *Baumgarten*, 110 N. Y. 380.) The lease from the mayor to George McKay, which is the source of title of all the parties to the action, did not convey the premises in suit. (*Codman* v. *Evans*, 83 Mass. 443; *Chapman* v.

*Edmands,* 85 Mass. 512; *Mott* v. *Mott,* 86 N. Y. 246; *Hussner* v. *B. C. R. R. Co.,* 96 N. Y. 18; *People* v. *Kerr,* 27 N. Y. 188; *Potter* v. *Collis,* 156 N. Y. 16; *Haberman* v. *Baker,* 128 N. Y. 253; *Dunham* v. *Williams,* 37 N. Y. 251; *Drake* v. *H. R. R. R. Co.,* 7 Barb. 508; *Bartow* v. *Draper,* 5 Duer, 130.) If it be assumed that McKay took title to the southerly half of the said old street, and that the same vested in Graham, then Graham divested himself of such title by his conveyance to the mayor, etc., dated and recorded March 7, 1836. (*Matter of Ladue,* 118 N. Y. 213; *White's Bank* v. *Nichols,* 64 N. Y. 65; *Hussner* v. *B. C. R. R. Co.,* 96 N. Y. 18.) The proceedings in the matter of the application of the mayor, etc., relative to opening Eighty-third street, etc., and the final order therein, are binding on the plaintiff, as heir at law of Dr. Graham. (Revised Laws, 1813, § 178; *Sherman* v. *McKeon,* 38 N. Y. 266; *Matter of Arnold,* 60 N. Y. 26; *Dolan* v. *Mayor, etc.,* 62 N. Y. 472; *Matter of Dept. of Parks,* 73 N. Y. 560; *Matter of Eleventh Ave.,* 81 N. Y. 437; *De Peyster* v. *Mali,* 92 N. Y. 262; *Donnelly* v. *City of Brooklyn,* 121 N. Y. 9.) Plaintiff is estopped from setting up any claim to the land in suit. (*Gomez* v. *Gomez,* 147 N. Y. 195; *Matter of Ladue,* 118 N. Y. 213.) The action was barred by the Statute of Limitations. (*Stevens* v. *Hauser,* 39 N. Y. 302; *Doherty* v. *Matsell,* 11 Civ. Pro. Rep. 392; *Fleming* v. *Burnham,* 100 N. Y. 10; *Christie* v. *Gage,* 71 N. Y. 189; *Baker* v. *Oakwood,* 123 N. Y. 16; Code Civ. Pro. §§ 365, 370, 372.) The proof of adverse possession, as defined by the statute, for a period of upwards of forty years prior to the commencement of this action, is uncontradicted. (Code Civ. Pro. §§ 370, 372.)

GRAY, J. The action is in ejectment and the title to a parcel of land is involved, which formerly formed part of an old street in the city of New York, as designated upon a map of the city's common lands. The title to the "Common Lands" was vested in the municipality of the city of New York and, in 1796, they were surveyed and mapped by

Goerck. , The land was platted in numbered lots, or blocks, which were divided by streets, having an uniform width of sixty feet. In 1804, one of these lots, known as number 155 on the map, was transferred, or leased in perpetuity, to George McKay by the mayor, etc., of New York and, by mesne conveyances, it came into the ownership and possession of John Graham, this plaintiff's father. The instrument transferring the land to McKay described it as number 155 on the map of the common lands and as bounded on the west by a road, called the "Middle Road" on the map, on the east, in part, by the "East Road" and, in part, by the line dividing the commons of the city of New York from the commons of the town of Harlem, "on the north side by a street of sixty feet in breadth between the said lot hereby granted and released and lot number 156 and on the south side by another street of the like breadth of sixty feet between the lot hereby granted," etc. The plot of land so transferred lay partly within what became the two blocks bounded by 83d and 85th streets and by the 4th and 5th avenues. Subsequently and pursuant to legislation, in 1807, commissioners were appointed for the purpose of laying out the streets in the city. They caused a map to be made showing the new streets; with this result that these new streets and those on the Goerck map did not conform in their lines and varied somewhat widely. Thereafter, applications by property owners affected, of whom Graham, plaintiff's father, was one, were made to the common council for proceedings to readjust boundary lines according to the new map, or plan. Action was authorized and taken upon the applications. In 1836, deeds were executed and delivered by and between the mayor, etc., of the city and Graham, whereby the city conveyed to Graham all of the block between 83d and 84th streets, and the 4th and 5th avenues, with the exception of a small piece of land in the northeast corner, and, simultaneously, Graham conveyed to the city the property which he had theretofore held by title derived under the former transfer to McKay of lot 155, on the Goerck map. The description in the deed by Graham

appears to have carried the grant only to the side of the street, which had been the northerly boundary of lot 155; reading, so far as material to the discussion, thus: "Northeasterly along the same, (Fifth Avenue), 200 feet to the southwesterly line or side of a certain other old street; thence southeasterly along the same 776 feet and 7 inches to the line which divides the Commons of the city of New York from the Commons of the town of Harlem," etc. This "old street" mentioned is the same "street of sixty feet in breadth," described in the mayor's deed to McKay. Its territory now lies within the northerly half of the present blocks between 84th and 85th streets and the 4th and 5th avenues and the property sought to be recovered in this action is a plot of about 50 feet by 30 feet, within the southerly half of the old street and near the center of the city block between these streets and Madison and 4th avenues.

The plaintiff claims that the conveyance to McKay, in 1804, by its description, carried the grant to the center of the old street on its north side, while in her father's re-conveyance, in 1836, to the city, the description expressly excluded the street and that, therefore, there still remained in him the title to the southerly half of the street. Undoubtedly, Graham's deed to the mayor, etc., of the city bounded the lands granted by the side of the old street; but whether the mayor's grant to McKay included the half of the street is a question dependent for its answer upon the interpretation which is to be given to the instrument of transfer. The general rule that a conveyance of land bounded by, or upon, a street carries the fee to the center of the street is founded upon a presumption. It is that, in ordinary cases, there is no reason for supposing an intention in a grantor of lands to reserve the fee in a strip of a street, or highway, bounding them, when its control and use have ceased to be of importance, or of benefit to him. (*Haberman* v. *Baker*, 128 N. Y. 253.) Such a presumption, necessarily, must give way before any evidence of a different intention in the parties. The presumption is not one *juris et de jure* and yields when the grounds upon which

it rests are displaced by other evidence. (*Dunham* v. *Williams*, 37 N. Y 251.) Whether a grant of lands shall be construed as extending to the center of the adjoining street is not decided, always, by the mere presence of the words, which give rise to the ordinary presumption, but may be decided by the intention of the parties; as it may be gathered from the description, when read with reference to the situation of the lands and the relations of the parties to them, and to the circumstances which enlighten their transaction. (See *Mott* v. *Mott*, 68 N. Y. 246.) If the right to the land in the boundary street is rested upon words, which operate by way of presumption and not by way of a precise description, there is no violation of the rules of law in showing, by evidence, what was intended as the boundary line of the grant. This is not a case of any mistake in the description; but one where the description is ambiguous in its application and, in such a case as that, the intention of the parties should, and will, control and the ambiguity may be removed by the facts in evidence. (*Muldoon* v. *Deline*, 135 N. Y. 150.)

There are various considerations, which seem to me to oppose themselves to the interpretation, which the plaintiff contends for, with respect to the grant to her father's predecessor in title, McKay. In the first place, it should be borne in mind that Graham, when executing a conveyance of his lands to the city, was acting in accord with the municipal authorities in an effort to readjust boundary lines, which, by the conflict in the maps, had become confused, by a rearrangement and exchange of territory and it is difficult to believe that it was in the understanding, or intention, of the parties that Graham was not reconveying all that he had title to in the block between 84th and 85th streets, in exchange for the conveyance to him of the block between 83d and 84th streets. In the next place, it is not without significance that the description in the grant to McKay of the northerly boundary is of " a street 60 feet in breadth *between the said lot hereby granted and released and lot No. 156*." These might well be regarded as words of exclusion as to the land in the street

and which make the plot granted external to the street; as in the case in Massachusetts, to which we are cited. (*Codman v. Evans*, 83 Mass. 443.) Such significance is merited from the circumstance that the municipality was conveying with reference to a map of its common lands, upon which streets were designated and reserved to be opened for the public use. Be all this as it may, however, there is a controlling consideration, which furnishes a sufficient and, to my mind, a satisfactory answer to the plaintiff's claim, with respect to the grant by the municipality to McKay. There is an obvious and a material distinction between the case of a conveyance by an individual of lands bounded upon, or by, a street and that of a similar conveyance by municipal authorities. The presumption that obtains, ordinarily, in the one case, I think, should be regarded as offset, in the other, by another presumption that the municipality would not part with the ownership and control of a public street once vested in it for the public benefit. The city was the proprietor of these common lands and they were mapped out for the municipal advantage, in their improvement by future grantees. There was an obvious purpose to subserve, when making grants of lands, in the retention of the ownership of the soil of the streets, which would be absent in the case of a grant by an individual. The municipality was vested with the fee in the soil of the streets and the trust attached that they should be held and kept open as public streets. It is, altogether, the sounder proposition, in my opinion, that the grant of title to property, bounded by, or upon, a city street, derived from the public authorities, in the absence of any more definite description, carries only to the line of the street; inasmuch as, in legal intendment, the street was held as, and should remain, a public highway. This principle was applied to the ownership of lands, which formerly formed part of the public lands of the United States and which bordered upon a stream declared a highway by act of Congress. (See *R. R. Co. v. Schurmeir*, 7 Wall. 272, 287; *Yates v. Milwaukee*, 10 ib. 497, 504.)

The cases of *Stevens* v. *Mayor, etc., of N. Y.* (84 N. Y. 296), and of *Sherman* v. *Kane*, (86 N. Y. 57), are not in point. The opinions in this court discussed no such question as we have presented to us now. In the former case, the plaintiff sought to recover against the city upon the ground of fraud and deceit in procuring a release of the plaintiff's title to certain premises and the opinion of this court passes only upon questions relating to the issues presented and to their trial. In the second case, the opinion passed upon the questions of the right of the city to claim a title by adverse possession of the premises described and of whether there had been a practical location of a boundary line by acquiescence.

I think the dismissal of the complaint was right and I advise the affirmance of the judgment appealed from, with costs.

PARKER, Ch. J., BARTLETT, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment affirmed.