SCHUTZE et al. v. DABNEY et al.
(No. 5901.)

(Court of Civil Appeals of Texas. Austin. April 4, 1918. Rehearing Denied April 15, 1918. On Motion to Reform Judgment, May 22, 1918.)

1. CONTRACTS ⬤≈206—PROVISION FOR ATTORNEY'S FEES—ACCRUAL OF LIABILITY.

Where a contract for the payment of money provides for the reasonable attorney's fees "when incurred," such fees are incurred when it becomes necessary to place the claim in the hands of attorneys for collection.

2. MECHANICS' LIENS ⬤≈1—STREET IMPROVEMENTS — "MORTGAGE LIEN" — "MECHANIC'S LIEN"—"PLEDGE."

Where a contract for paving, excavating, and guttering a street provided that the contractor was granted a mechanic's lien on the premises to secure the payment of the contract price, the lien provided for was a "mechanic's lien," and not a "mortgage lien," there being no clause of conveyance in the contract, a mortgage and a mechanic's lien being different, a mortgage being created by contract, while a mechanic's lien is created by law, although arising out of contract, nor was the contract a "pledge" of land," since "pledge" applies to personalty, and not to land.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mechanic's Lien; Mortgage; Pledge.]

3. BOUNDARIES ⬤≈20(3) — CONVEYANCE OF LAND BORDERING ON HIGHWAY.

While a conveyance by an individual of land bordering on a public highway in the absence of provisions to the contrary conveys title to the center of the highway if the grantor owned such land, where the state or municipality owns the land and makes a conveyance calling for a highway, the fee to the highway is not conveyed, and the grantee cannot grant a valid mechanic's lien thereon to a contractor to secure payments under a contract for street improvements.

4. HOMESTEAD ⬤≈146—EXEMPTION—"FORCED SALE."

A lien in a contract for street improvement to secure payment to the contractor covering a homestead and given by a widow, if construed as a mortgage, is invalid, since Const. art. 16, § 50, excepts homesteads from forced sales, and provides that no mortgage, trust deed, or other lien thereon shall be valid except for purchase money or improvements, there being no power of sale in the contract, and foreclosure of a mortgage by decree of court, and not under a power, being a forced sale within the constitutional provision.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forced Sale.]

On Motion to Reform Judgment.

5. APPEAL AND ERROR ⬤≈1232—SUPERSEDEAS BOND—PROSECUTION OF APPEAL "WITH EFFECT"—REVERSAL.

An appeal is prosecuted "with effect" within the meaning of a supersedeas bond where it is prosecuted successfully, and appellant succeeds in reversing the judgment in a material part, such as the enforcement of the lien in a suit on a contract to pay money, although the entire judgment is not reversed.

Appeal from District Court, Travis County; Ireland Graves, Judge.

Suit by L. M. Dabney and others, trustees, etc., against Mrs. Annie Schutze and others.

From a decree for plaintiffs and foreclosure of a lien, defendants appeal. Affirmed in part, and in part reversed and remanded, and judgment reformed on motion.

Geo. S. Dowell, of Houston, and R. E. Cofer, of Austin, for appellants. Brooks, Hart & Woodward, of Austin, for appellees.

### Findings of Fact.

JENKINS, J. The following map and the notations thereon will aid in understanding the issues involved herein:

GOVERNMENT TRACT, CITY OF AUSTIN
PLATTED IN 1840 UNDER THE ACT OF CONGRESS OF JAN 5, 1840.

(DIVISION D.)
49

36
34

35

COLLEGE HILL

N

22½

NOTE: LOT 34, BLOCK 36, ABOVE IS LAND IN QUESTION.

The state of Texas, as the successor of the Republic of Texas, was formerly the owner of all of the land shown on said map, and is still the owner of the 40 acres shown thereon as "College Hill," the same being now the campus of the State University.

On October 28, 1848, the state of Texas, by letters patent, granted to Louis Horst 59 acres of land, including blocks 22½, 35, and 36, shown on said map, and other blocks to the west, describing same by block numbers, as shown on said map, and not otherwise. On March 28, 1849, the state of Texas patented block 49 to S. G. Hancy.

The appellant is the owner by mesne conveyances from Louis Horst of lot 34 in said block 36, described in such conveyances by lot and block numbers. The appellant executed the following contract:

"The State of Texas, County of Travis.

"Mrs. Annie Schutze, owner of all of lot No. 34 in block 36, div. D, fronting 70 feet on the west side of Guadalupe street, in the city of Austin, Tex., known as No. —— and described as follows: * * * in consideration of the improvement of said street, including paving, guttering, and curbing the same by virtue of a resolution adopted by the council of said city, and the contract and specifications therefor adopted by said council, upon the completion of said improvements in front of said premises and their acceptance by the city, do promise to pay Texas Bitulithic Company or its assigns what-

ever sum shall be ascertained to be the pro rata share of the costs of said improvements in front of said premises, according to the front-foot rule under the terms of said resolution and contract not to exceed the sum of —— dollars ($——), being three hundred fifteen and $55/100$ dollars ($315.55) for paving, excavating, and guttering, and —— dollars ($——) for the construction of concrete curbs in front of said premises, and being at the rate of $5.5078 per front foot for said paving, including excavating and guttering, and $—— per front foot for curb. But, if the frontage of said premises on said street shall be ascertained to exceed the amount above stated, then the cost of improvements in front of said excess shall be paid for to said company at the rates per front foot above stated.

"The amount due hereon shall be paid as follows: All cash at the option of the undersigned or $—— 30 days after said improvements have been completed in front of said premises, and accepted by the city, and the balance in four equal installments on or before one, two, three, and four years respectively after such acceptance at the rate of 7 per cent. per annum, payable annually, together with reasonable attorney's fees thereon and all costs of collection if incurred.

"If default shall be made in the payment of any installment of principal or interest when due, at the option of said company or other legal holder hereof, the whole amount then unpaid hereon shall at once become due and collectible.

"And in consideration of said improvements to and upon said premises and the fact that thereby the value thereof will be enhanced in excess of the cost, ——, the undersigned, do hereby expressly grant unto Texas Bitulithic Company and its assigns a mechanic's lien upon said premises, to secure the payment of indebtedness herein mentioned, and —— do hereby consent that the said council of Austin may levy a special assessment against the said property and the owner thereof for an amount ascertained to be the proportionate share chargeable against the same as herein provided.

"It is agreed that the acceptance of said improvements by the city shall be conclusive between the parties hereto of the proper performance of the contract therefor, and in consideration hereof, and of the extension of the time of payment of the said assessment hereby granted, the said assessment by the city and all proceedings with reference thereto are hereby expressly ratified and confirmed, and any errors or invalidity therein are hereby waived.

"It is expressly understood this obligation is not conditioned upon the improvement of said street before all property abutting thereon, but same may be omitted before the property of any owner or owners who shall not make satisfactory arrangements with said company for the payment of his or their proportion of the cost of such improvements. This obligation shall be deemed cumulative and independent of such proceedings as said city council may take or cause to be taken to assess and secure the payment of the cost of such improvement upon said premises or its owner, and any payment made to the city under such proceedings shall operate as a credit and shall be indorsed hereon.

"Witness our hands this the 31st day of January, A. D. 1914. Mrs. Annie Schutze.
"A. C. Schutze."

The work was done as by said contract required. Appellant owes appellees, as the assignees of the account, the amount for which judgment was rendered herein. The amount of the attorney's fee for which judgment was rendered is reasonable, if any attorney's fee is recoverable under the contract. At the

time of the execution of the contract sued upon, and prior thereto, and at the time of the trial hereof, appellant was a widow, residing upon lot 34 with her minor children, as her homestead.

The case was tried before the court without a jury, and judgment was rendered against appellant for the amount due on said contract, together with 10 per cent. attorney's fee, and with foreclosure of lien on said lot 34.

The court also found that A. C. Schutze had no interest in the case.

### Opinion.

[1] It is the contention of appellant that the judgment was erroneous in awarding attorney's fees, for the reason the contract does not state any contingency upon which attorney's fees might become due. With this we do not agree. The agreement was to pay reasonable attorney's fees, "if incurred." We think this means if legally incurred; that is to say, if it should become necessary to place the claim in the hands of attorneys for collection. Such necessity arose in this case by reason of the failure of appellant to pay when due.

[2] The judgment was for the foreclosure of a lien on the premises involved. It does not state whether the lien is a mechanic's lien or a mortgage lien. In its conclusion of law filed herein the court states that the appellee has a mortgage lien which he is entitled to have foreclosed. The contract calls it a mechanic's lien. The appellee in his petition calls it a mechanic's lien; and we think the lien provided for in the contract is a mechanic's lien.

Appellee argues that the lien mentioned in the contract had all of the elements of a mortgage, in that "it shows the intention of the parties to pledge land as security for debt, with a defeasance upon the payment of the debt, and with the right of redemption and foreclosure."

Though a mechanic's lien and a mortgage have in common the element of security for debt, they are not the same thing. They are recognized by the Constitution and laws of this state as being different things. "Mortgage" was a term well understood before the adoption of our Constitution and statutes. Though a mortgage does not in fact convey title, except as security for debt, it does to that extent convey title. A mortgage in form possesses all of the requisites of a deed, with the additional clause of defeasance.

In the excerpt from appellee's brief above set out the contract sued on is referred to as a "pledge of land." Pledge applies to personal property, and not to land; also, that it is a pledge with "a defeasance," and with "the right of redemption." "Defeasance" and "redemption" imply a conveyance, and there is no clause of conveyance in the contract here involved. It is no reply to say that these distinctions are technical. But, aside from

these, there is this substantial difference between a mortgage and a mechanic's lien: In a mortgage the lien is created by contract; a mechanic's lien is created by law. It arises out of a contract which provides for the debt, but the lien is given by statute. Guaranty Co. v. Cash, 99 Tex. 555, 91 S. W. 781; Lambert v. Williams, 2 Tex. Civ. App. 413, 21 S. W. 108.

The distinction between a mortgage and a mechanic's lien is important in the instant case, in that, if the appellant owns the street in front of lot 34 to the center of such street, the homestead question aside, the appellee has a mechanic's lien thereon. Lewis v. Paving Co., 184 S. W. 680; Waples v. Ross, 141 S. W. 1027. On the other hand, if the fee in the street does not belong to appellant, no mechanic's lien exists under the contract. A mechanic's lien cannot be created by contract on land other than that upon which the improvements are made. Guaranty Co. v. Cash and Lambert v. Williams, supra.

Did the conveyance from the state to Horst convey the fee to the center of the street, in front of the blocks, as shown on the map set out in the statement of facts? If so, the mesne conveyance from Horst to appellant conveyed such title to appellant, and the street which was improved in front of lot 34 is a part of said lot. If not, it is a parcel of land distinct from lot 34, and belongs, not to appellant, but to the state of Texas, or to the city of Austin, if by its charter it has acquired the state's right therein.

[3] It is a general rule of law, too well established to require citation of authority, that a conveyance by an individual to land bordering on a public highway, in the absence of an explicit statement in the deed to the contrary, conveys title to the center of such highway, provided the grantor at the time owned such land. This, however, is only a rule of construction, and may be rebutted by apt language to the contrary in the conveyance. 4 R. C. L. p. 78; 9 C. J. 198. The reasons for this rule, stated in numerous opinions, are summed up in C. J. p. 197; the first two of which are as follows:

"(1) The absence of any purpose to be served in the retention by the grantor of a narrow strip of land conveyed, or the absence of any practical use to him for the strip of land; (2) the immediate interest of the vendee therein, and its direct and substantial value to him."

The force of these reasons will be readily perceived where the highway is abandoned subsequent to the conveyance. For similar reasons, it has been held that, where the owner of land lays out a highway on the border of and wholly on his land, a conveyance by him, calling for such highway, will convey the fee to all of the highway. Healey v. Babitt, 14 R. I. 533; Re Robbins, 34 Minn. 99, 24 N. W. 356, 57 Am. Rep. 40; Taylor v. Armstrong, 24 Ark. 102.

The reasons for this rule, however, do not

apply when the government, state or municipal, owns the land, and makes a conveyance calling for a highway. It is the duty of the government to maintain such highway—a duty which is not imposed upon an individual owning land contiguous thereto. Accordingly it is held that, where a government owns land, including a highway, and conveys the same, calling for such highway, such conveyance does not convey the fee to any portion of the highway, in the absence of language showing such intent. McDonald v. Kummer, 56 Colo. 160, 137 Pac. 51; Graham v. Stern, 168 N. Y. 523, 61 N. E. 891, 85 Am. St. Rep. 694; Haberman v. Baker, 128 N. Y. 253, 28 N. E. 370, 13 L. R. A. 613; Dunham v. Williams, 37 N. Y. 251; 4 Am. & Eng. Enc. of Law, 812, 813; 5 Cyc. 907; 9 C. J. 204.

We quote from Graham v. Stern, supra, Mr. Justice Gray speaking for the court, as follows:

"It is altogether the sounder proposition, in my opinion, that the grant of property, bounded by, or upon, a city street, derived from the public authorities, in the absence of any more definite description, arrives only to the line of the street, inasmuch as in legal intendment, the street was held as, and should remain, a public highway. This principle was applied to the ownership of lands, which formerly formed a part of the public lands of the United States, and which bordered upon a stream declared a highway by act of Congress. See Railroad Co. v. Schurmeir, 7 Wall. 272–287 [19 L. Ed. 74]; Yates v. Milwaukee, 10 Wall. 497–504 [19 L. Ed. 984]."

This principle prevails in Texas as to streams declared by law to be navigable. Austin v. Hall, 93 Tex. 597, 57 S. W. 563.

We know of but one case in Texas involving the issue as to whether a grant by a government bordering on a highway extends to the center thereof, and that is the case of Mitchel v. Bass, 26 Tex. 372; and 33 Tex. 265. As that case was decided under principles of the civil law, it has no application to the instant case.

Construing the law as we do, that the grant from the state of Texas to Louis Horst did not convey title to any part of Guadalupe street, we hold the contract sued upon does not constitute a valid mechanic's lien on lot 34.

[4] If, however, the instrument sued on is a mortgage, and the patent from the state to Louis Horst conveyed title to the center of Guadalupe street, does such mortgage create a valid lien on appellant's homestead? The contention is that it does, by reason of the fact that she was a widow at the time she executed such instrument.

Our present Constitution (article 16, § 50) excepts homesteads from forced sales. A like provision was contained in the Constitution of 1845 (article 7, § 32). Construing this provision of that Constitution, the Supreme Court of this state, in Sampson v. Williamson, 6 Tex. 102–110 (55 Am. Dec. 762), held that a foreclosure of a mortgage by decree of court was a forced sale, and for that

reason a mortgage without power of sale on a homestead was void. This decision has never been overruled or modified, and is the law in this state.

In the case above cited it was said:

"A mortgage depending for its enforcement on judicial process would be ineffectual, because a sale under such process would be forced [sale]. But a sale under a power in a mortgagee or trustee would be voluntary; and the assent of the wife would give as much validity to such mortgage as to an absolute and immediate sale."

This distinction was recognized in Jordan v. Peak, 38 Tex. 429, decided before the adoption of the present Constitution. In numerous other cases arising since the adoption of the present Constitution it has been held that a deed of trust on a homestead executed by an unmarried person is valid. Lacy v. Rollins, 74 Tex. 568, 12 S. W. 314; Smith v. Von Hutton, 75 Tex. 626, 13 S. W. 18; Watts v. Miller, 76 Tex. 13, 13 S. W. 16; Hensel v. Building Ass'n, 85 Tex. 215, 20 S. W. 116; Kiolbassa v. Raley, 1 Tex. Civ. App. 169, 23 S. W. 253; Kidwell v. Carson, 3 Tex. Civ. App. 327, 22 S. W. 534; Davis v. Converse, 46 S. W. 910; Lee v. Mortgage Co., 25 Tex. Civ. App. 481, 61 S. W. 134; Echols v. Mercantile Co., 38 Tex. Civ. App. 65, 84 S. W. 1082; Spencer v. Schell, 107 Tex. 44, 173 S. W. 867. In each of the cases above cited the lien was created by a deed of trust with power of sale. All of these cases seem to have followed Lacy v. Rollins, supra. That case discusses the effect of the words, "No mortgage, trust deed, or other lien created by the husband, whether alone or together with the wife, shall ever be valid," etc., and holds that a deed of trust executed by an unmarried man is valid. Whether or not such decisions are correct when confined to deeds of trust which are voluntary conveyances we are not called upon to decide in the instant case, for the reason that the contract herein sued upon is not of that character.

If it should be held that the reasons stated by Judge Gaines for the decision in Lacy v. Rollins will apply also to a mortgage without power of sale, we are not impressed either with the reasons there given, or the conclusion reached. We do not think that learned judge intended they should be so applied.

Judge Gaines stresses the idea that the homestead exemption is for the benefit of the wife. Such is evidently one of its beneficent purposes. But we do not see why the framers of the Constitution should have been careful to protect a wife while she has the assistance and counsel of a husband, and should have withdrawn that protection as soon as death had deprived her of such assistance and counsel, and left her to struggle alone to support herself and her fatherless children. We use the word "withdrawn" advisedly; for under the former Constitution and decisions thereunder the homestead

was exempt from forced sale, whether it was that of a married or unmarried person.

The present Constitution, in reference to homestead exemptions, reads as follows:

"Art. 16, § 50. *Homestead Exemptions—Incumbrances—Pretended Sales.*—The homestead of a family shall be, and is hereby, protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

The Constitution of 1845 protected the homestead from forced sale, but did not contain anything with reference to exceptions, mortgages, deeds of trust, or other liens. Why were those words added to the present Constitution? The explanation is found in the following language used by Judge Gaines in Lacy v. Rollins, supra, 74 Tex. 568, 569, 12 S. W. 314, 315:

"The provision in reference to mortgages and other liens is not found in any previous Constitution, and the construction had been that the mere exemption from forced sale did not preclude the husband and wife from giving a valid mortgage on the homestead, provided it contained a power of sale, and did not require the interposition of the courts to aid in its enforcement. Sampson v. Williamson, 6 Tex. 102 [55 Am. Dec. 762]; Jordan v. Peak, 38 Tex. 429. The ruling was unsatisfactory to many of the legal profession, and the framers of the existing Constitution evidently considered that it was not in accordance with the general policy of the exemption laws to permit it to be incumbered by a deed in trust or mortgage with a power of sale."

In other words, it was the purpose of the framers of the Constitution, and evidently of the people who adopted it, to extend the protection to the homestead beyond what had previously been accorded it. With this purpose in view, did they in fact deprive owners of a homestead, if unmarried, of an immunity which they had theretofore enjoyed? What is the added language with reference to liens on homesteads? It is:

"No mortgage, trust deed, or other lien on the homestead shall ever be valid, except," etc.

A mortgage by an unmarried person is not one of the exceptions. We are sustained in the construction which we here give to article 16, § 50, of the Constitution, supra, by the rule that, where an exception is intended to apply to a general statement, it should be indicated by apt words such as, "except," "provided," etc., and also by the rule that, when exceptions follow words of general im-

port, no exception is presumed to be intended, except those named. We think the additional words "whether such mortgage, trust deed, or other lien shall have been created by the husband alone, or together with his wife," were intended only to emphasize the idea that no lien on the homestead, however and by whomsoever executed, should ever be valid. If, however, we adopt the construction suggested by Judge Gaines, and substitute "except" for "whether," then, by what appears to us to be a strained construction, it might be said that the whole added clause had reference only to mortgages executed by husbands; and, as an unmarried person is not a husband, it does not relate to such persons. But if the whole clause with reference to mortgages, etc., be nullified as applied to unmarried persons, that clause which excepts a homestead from forced sale still remains, and, while deeds of trust might be valid, mortgages without power of sale would not be.

The most plausible ground upon which Lacy v. Rollins, and the decisions which follow it, can be based, may be deduced from the following language used in that case (74 Tex. 569, 570, 12 S. W. 314, 316):

"Our laws left persons sui generis and unmarried free to make such voluntary disposition as they saw proper of their own property."

The power to convey includes the lesser power to incumber, unless such power be restricted by law. Hence it is argued that, as there is no restriction upon an unmarried person to voluntarily convey his homestead, there is no restriction upon his executing thereon a deed of trust, which is a voluntary conveyance. But this reason does not apply to a mortgage without power of sale, a foreclosure of which is a forced sale, which is inhibited by the Constitution. There has never been a time in this state when a husband and wife could not voluntarily sell their homestead. On the other hand, there has never been a time since the adoption of the Constitution of 1845 when a husband and wife could subject their homestead to forced sale by executing a mortgage thereon. Hence it is apparent that the power to sell does not, under our Constitution, include the power to incumber, if such incumbrance involves a forced sale.

In making this statement, we are not unaware of the fact that it has been held in this state that an unmarried man can mortgage his homestead, and that the same will be enforced by process of law. But such decisions were made without due consideration, and do not correctly announce the law. The cases here referred to are Harle v. Richards, 78 Tex. 80, 14 S. W. 257; Moore v. Poole, 25 S. W. 802; and McGee v. Tinner, 61 Tex. Civ. App. 347, 129 S. W. 867.

The criticisms of Harle v. Richards in Lee v. Mortgage Co., Strong v. Elder, and in Spencer v. Schell, supra, indicate that the learn-

ed commissioner who wrote the opinion in Harle v. Richards did not give proper consideration to the provisions of our Constitution in reference to homestead exemptions. This is further indicated by the fact that the authorities therein cited are not applicable to the facts of that case, and do not sustain the decision.

In quite a number of the cases hereinbefore cited wherein was involved the issue as to the validity of a deed of trust executed by an unmarried person the expression is used that an unmarried person may execute a valid mortgage on his homestead, meaning a mortgage with a power of sale, but not calling attention to that fact. It was such expressions as these, used without qualification, none being necessary as applied to the facts of such cases, which lead this court into error in Moore v. Poole, supra. From an examination of the record in that case we have ascertained that no brief was filed by appellee. There was nothing in appellant's brief to call the attention of the court to the distinction between a mortgage with power of sale and a mortgage without such power.

We have not had the opportunity of examining the record in McGee v. Tinner, supra, but from reading the opinion we apprehend that it was decided under like circumstances as Moore v. Poole. But, however this may be, we think it clear that a forced sale of a homestead under a mortgage, whether executed by a married or an unmarried person, is inhibited by the Constitution of this state.

For each and all the reasons stated herein, the judgment of the trial court is affirmed in so far as it decrees an indebtedness by appellant to appellee, and reversed and here rendered in favor of appellant in so far as it decrees a foreclosure of a lien of any character upon the premises in controversy.

Affirmed in part, and in part reversed and rendered.

### On Motion to Reform Judgment.

On a former day of this term judgment was entered herein against the sureties on the appeal bond. This, we think, was erroneous.

The bond is a supersedeas bond in the ordinary form, conditioned that the appellant should prosecute her appeal with effect and perform the judgment of the Court of Appeals. The word "and" in the bond should be read "or." Robinson v. Brinson, 20 Tex. 438; Railway Co. v. Stanley, 76 Tex. 418, 13 S. W. 480; Surety Co. v. Koen, 49 Tex. Civ. App. 98, 107 S. W. 938; Mills v. Hackett, 1 White & W. Civ. Cas. Ct. App. § 846; Sullivan v. McFarland, 1 White & W. Civ. Cas. Ct. App. § 1100; Worley v. Hudson, 2 Willson Civ. Cas. Ct. App. § 26.

[5] To prosecute an appeal "with effect" means to prosecute it successfully. Michael v. Ball, 8 Tex. Civ. App. 406, 27 S. W. 949. An appeal is prosecuted successfully if there by the appellant succeeds in reversing the judgment in a material part. It is not necessary that the judgment should be reversed in every part. Blair v. Sanborn, 82 Tex. 686, 18 S. W. 159.

In the instant case a material part of the judgment was the enforcement of the lien against the appellant's homestead. She could not suspend this part of the judgment without appealing and giving a supersedeas bond. The bondsmen bound themselves that she would prosecute her appeal "with effect." This she did when she secured a reversal of the judgment enforcing such lien.

The motion to reform the judgment is granted; and the judgment of this court, in so far as it is against the sureties on the appeal bond, is set aside.

Motion granted, and judgment reformed.