F. HENSEL ET AL. v. THE INTERNATIONAL BUILDING AND LOAN ASSOCIATION.

No. 8270.

1. **Usury.**—See facts where the contracts signed by a shareholder in a building association, taken in connection with the by-laws of the concern, show that usurious interest was charged for advances and loans made by the company.

2. **Vendor's Lien—Subrogation.**—The holder of a note executed for a loan applied to the discharge of the vendor's lien upon property mortgaged to secure it, becomes subrogated to the discharged vendor's lien to the amount so applied.

3. **Allowance of Claim by Administrator.**—When an administrator has allowed a claim against the estate, he can not withdraw such allowance by protesting against the approval by the county judge.

4. **Order of Probate Court Setting Aside Homestead.**—The order of the Probate Court setting aside the homestead to the widow and children, or either, under the statute, does not exhaust the power of the court over such homestead, and it is subject to sale for any liens upon it.

5. **Homestead of Widower may be Mortgaged.**—A head of a family after his wife's death, his family consisting of his minor children, may mortgage his homestead.

APPEAL from Bexar. Tried below before Hon. G. H. NOONAN.

*Otto Staffel* and *L. N. Walthall,* for appellants, cited: Rev. Stats., arts. 2015, 2025, 2978, 2979; Wise v. O'Malley, 60 Texas, 588; Buchanan v. Bilger, 64 Texas, 589; Gilder and wife v. Hearne, 79 Texas, 120; Building Assn. v. Lane, 81 Texas, 369; Stout v. Bank, 69 Texas, 384; Jackson v. Cassidy, 68 Texas, 283; Ruhl v. Kauffman, 65 Texas, 723; Boehl v. Wadgymar, 54 Texas, 589; Fossett v. McMahan, 74 Texas, 546; Lawler v. White, 27 Texas, 250; Fitch v. Boyer, 51 Texas, 336; Guilford v. Love, 49 Texas, 715; Black v. Epperson, 40 Texas, 179.

*B. L. Aycock,* for appellee, cited: Rev. Stats., arts. 2025, 2200; Glenn v. Kimbrough, 70 Texas, 147; Stout v. Bank, 69 Texas, 384; Gilder v. Hearne, 79 Texas, 120; White v. Shepperd, 16 Texas, 163; Flanagan v. Cushman, 48 Texas, 241; Clements v. Lacy, 51 Texas, 150; Astugueville v. Loustaunau, 61 Texas, 233; Dawson v. Holt, 44 Texas, 174; Mundine v. Berwin, 62 Texas, 343; Ball v. Hill, 48 Texas, 641; Robertson v. Paul, 16 Texas, 477; Withers v. Patterson, 27 Texas, 500.

HENRY, ASSOCIATE JUSTICE.—The appellee was a corporation for the purpose of conducting the character of business suggested by its name, and Martin Rischki was one of its shareholders.

Among others, the charter and by-laws of the corporation contained the following provisions:

Article 7 of the charter provides, that " at each meeting the money in the treasury shall be offered for loan in open meeting, at a rate of interest not to exceed 8 per centum per annum," etc.

Section 8 of the by-laws provides, that " each stockholder, for each and every share of stock held by him in the association, shall be entitled to receive a loan not exceeding $200, and he shall pay interest thereon at the rate of 6 per cent per annum for such loan," etc.

The by-laws in evidence provided, that " should any borrower desire to repay the association the money advanced in order to redeem his shares, he shall repay the association the money actually received and one-eighth of the premium for which such loan was made for each year or fractional part thereof such borrower has had the use thereof."

Martin Rischke owned four shares in the fifth series of stock issued by the corporation and one share of stock in the sixth series.

On the 24th day of May, 1886, he borrowed from the association the sum of $384, in consideration of which he executed the following obligation:

" $800.   (Eight hundred dollars.)
                              " SAN ANTONIO, TEXAS, May 20, 1886.
" On or before the maturity of the fifth series of the stock of the International Building and Loan Association, we, or either of us, promise to pay to the order of the International Building and Loan Association the sum of $800, together with interest at the rate of 6 per cent per annum from the date hereof until paid; also the further sum of $8 per month from this day until the maturity of the aforesaid series of stock, as provided for in the by-laws of said association, which by-laws are made and taken to be a part hereof."

On the 8th day of April, 1887, Rischki borrowed $100 from the association, for which he executed his obligation for $200, payable upon the

maturity of the sixth series of stock, and similar in other respects to the one for $800.

When he procured the first loan Rischki was a married man and owned a homestead in the city of San Antonio. For the purpose of securing the payment of his obligation for that money, he and his wife executed a deed of trust upon the homestead, as well as upon his shares of stock belonging to the fifth series.

His wife died, leaving him and two unmarried daughters in possession of the homestead, after which he executed a deed of trust upon it to secure the $200 obligation.

At the date of the execution of the obligation for $800 Rischki still owed to one Zashlag $320 of the purchase money for his homestead, for which a vendor's lien existed. This amount was paid by the association to Zashlag out of the $384 loaned to him.

The deed of trust which Rischki and wife then executed as aforesaid to the association recited that the whole of the money loaned "is used in paying the purchase money on the lot herein described and in building and improving on said lot," but it is not otherwise shown that the amount of the loan remaining after the discharge of said vendor's lien note was in fact used in paying for improving the homestead.

It was testified by a witness, that said balance was "applied by Rischki in the purchase of material for the building of a house on said lot," but not that the house was actually constructed.

On the 6th day of June, 1887, Martin Rischki signed a paper which, after reciting the fact that he had previously borrowed from the International Building and Loan Association "a sum of money and executed an instrument in writing therefor, giving a lien on real property," proceeds as follows:

"And I having applied to the directory of said association for relief, and the same being granted, this instrument witnesseth, that in consideration of said association cancelling and forgiving a portion of said debt and lowering the premium I then agreed to pay, and granting me a less rate of interest and dues to be by me hereafter paid monthly; this is, therefore, a reaffirmance of said recorded instrument and of the debt therein recited, together with all the stipulations in it contained, except as to the amount of said debt, which is hereafter to be $780, instead of the amount in said instrument mentioned, and that monthly dues and interest is hereafter to be reduced to $7.80 per month; and I hereby relinquish —— shares, which are cancelled and made void, and this to be a complete accord and satisfaction between myself and said association of any and every claim whatsoever not herein before specially provided for."

This instrument evidently refers alone to the obligation for $800, and it is stated in argument that it was made for the purpose of relieving the original transaction from the vice of usury.

It appears that the shares of stock were by the by-laws required to be paid for in monthly installments of $1 upon each share.

Upon the death of Martin Rischki an administration upon his estate was opened, after which the following claim, properly verified, was presented to the administrator, and was by him allowed for the full amount thereof:

*International Building Association in account with Martin Rischki:*

| | | |
|---|---|---|
| June, 1886, for loan | $384 | 00 |
| premium | 180 | 00 |
| May, 1887, for loan. | 100 | 00 |
| premium | 34 | 35 |
| Dues and interest unpaid | 66 | 40 |
| | $764 | 75 |

*Credit.*

| | | |
|---|---|---|
| Four shares of the fifth series, at $57 per share | $228 00 | |
| One share of the sixth series, at $43 per share | 43 00— | $271 00 |

Balance due ........................................$493 75

The claim as allowed was filed in the County Court, but it appears that before it was acted upon by the court the administrator filed objections to its approval by the court, on the grounds that it was founded upon a usurious contract, and had been paid.

One of the daughters of Martin Rischki filed objection, upon the same grounds, to the approval of the claim.

The association pleaded the agreement of the 6th day of June, 1887, in reply to the charge of usury.

In the County Court an order was entered approving the claim for $296.30.

Martha Rischki, the contesting daughter, appealed to the District Court from this order.

In the District Court an additional objection to the approval of the claim, that the County Court had no jurisdiction of the matter because the claim had never been allowed by the administrator, was filed. The contestant also pleaded there, that before the order of allowance was made in the County Court by which the amount allowed was made a lien upon the homestead, said court had set aside the homestead to the unmarried daughters of the deceased.

In the District Court a decree was rendered approving the claim for the full amount thereof and foreclosing the lien created by the deed of trust upon the real estate.

If the contracts are tested solely by the terms appearing upon the face of the notes or obligations, they were both unquestionably usurious, as in addition to reserving interest at the rate of 12 per cent per annum, the

principal of the first one was more than double the sum of money loaned, while the second or smaller one was exactly double the sum loaned. By the new contract, made with regard to the larger note on the 6th day of June, 1887, it was reduced to exactly double the sum borrowed.

But on account of the stipulation contained in each of the obligations, that the by-laws of the corporation "are made and taken to be a part hereof," it becomes necessary to consider such parts of the by-laws as relate to the amount to be paid by the borrower to discharge his obligations, in connection with the question of usury, as well as the amount to be paid in discharge of the obligations.

The by-law referred to is one that we have already quoted, by which the actual undertaking of the *borrower was to repay the money advanced to him, and one-eighth of the premium for which the loan was made for each year or fractional part thereof that the borrower had the use of the money.*

The premium promised for the first loan of $384 was by the second contract in regard to it $384, and the premium for the loan of $100 was $100.

If interest is calculated at the rate of 12 per cent per annum upon the sums loaned, and the premiums charged therefor are divided by eight, as prescribed in the by-law, it is plain that more than 12 per cent per annum was required to be paid for the use of the money both by the original contracts and the one that was made as a substitute for the first loan.

From what we have said the result follows, that the contracts must be treated as usurious, and that all payments made on account of interest must be applied to the principal. Jackson v. Cassidy, 68 Texas, 282.

It will be seen that the association credited the account with the four shares of the fifth series at the value of $57 each, and one share of the sixth series at the value of $43.

The proof was that the "withdrawal value" of the five shares was $271, and that the estimated value was $327.70.

It seems to us that the withdrawal value should control. The evidence shows that the borrower paid $146.80 interest on the first loan, and $33 on the second one. When these two sums and $271, the withdrawal value of the stock, are deducted from $484, the sum of the original loans, it will appear that a balance of $33.20 is now due to the association, for which judgment, with a foreclosure of the lien upon the homestead, will be rendered in this court.

We do not think that the objection made that the claim was never allowed by the administrator was well taken. He did allow it, and that action was not nullified nor affected by the fact that he subsequently resisted the approval of the claim by the court.

The action of the County Court in setting aside the homestead to the unmarried daughters did not divest it of the authority to subsequently charge the property with a superior lien. The homestead is properly set aside before the time for the presentation of claims against the estate ex-

pires, and such disposition of it is made subject to pre-existing claims against it, which may still be enforced.

With regard to the proposition, that neither of the liens upon the homestead was valid, we think it sufficient to say, that the evidence shows that the first one was made by the husband and wife to pay off a subsisting vendor's lien against the property amounting to $320. This money was paid by the lender to the lien holder, who made the deed to the property to Richski on the same day that the money was loaned to him and on the same day that he and his wife made the deed of trust. We think a valid lien was created for the sum of $320.

The second lien created by the husband after his wife's death was valid. Both liens are valid and subsisting for the amount here adjudged to be due, and will be enforced.

*Reversed and rendered.*

Delivered June 10, 1892.

Motion for rehearing refused.