RUSSELL et al. v. BROOKS. (No. 10343.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 13, 1923.)

**1. Mines and minerals 78(1)—Implied obligation by lessee to proceed in good faith.**

An oil and gas lease not conveying the oil and gas in place *held* to carry with it an implied obligation to proceed in good faith and with reasonable diligence drill upon the lands in it and other companion leases.

**2. Mines and minerals 58—Contract providing for forfeiture of oil leases held without consideration and unenforceable.**

A contract providing for the forfeiture of certain oil leases upon failure to commence drilling operations thereon within a specified time was without consideration and unenforceable, where the leases had not been forfeited and were not subject to forfeiture when the contract was made and nothing was paid as consideration.

**3. Principal and agent 100(2)—Agent held without presumed authority to contract for forfeiture of leases in default of drilling.**

Where one named in oil and gas leases as lessee was acting as a general agent or manager for others, his authority cannot be extended by presumption so as to authorize a surrender of their rights by an agreement for forfeiture of the leases, if drilling was not commenced within a specified time.

**4. Judgment 680—Denying cancellation of a lease not res judicata as to lessee similarly situated.**

A judgment denying the cancellation of one of a group of oil and gas leases executed by different parties, who subsequently contracted with the lessee jointly for forfeiture if drilling was not commenced by a specified date, was not res judicata as to another lessee similarly situated, where the lessees were not interested in each other's leases and the proceedings were different in other respects.

**5. Mines and minerals 78(7)—In suit to cancel lease, evidence of fraud in obtaining earlier leases held irrelevant to issues.**

In a suit to cancel an oil and gas lease which was substituted for earlier leases, where the sole ground of forfeiture relied on was the breach of a contract to commence drilling before a certain date, and there was no allegation that the lease was subject to forfeiture by reason of fraudulent representations in obtaining the earlier leases, evidence of such representations was irrelevant and objectionable.

Appeal from District Court, Young County; H. R. Wilson, Judge.

Action by H. L. Brooks against C. H. Russell and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Fred T. Arnold, of Graham, for appellants. Schenck & Triplett, of Graham, for appellee.

CONNER, C. J. This suit was originally instituted by the appellee, H. L. Brooks, to cancel a certain oil lease on land owned by him in Young county. By his amended petition, upon which the trial proceeded, he complained of appellants C. H. Russell, F. A. Merrill, residents of Oklahoma, and the Planters' Co-operative Oil & Gas Company, and the Pioneer Oil & Gas Company, both of which are alleged to be joint-stock companies operating under a declaration of trust and also to have been incorporated under and by virtue of the laws of the state of Oklahoma, with offices and principal places of business in that state. The lease which the plaintiff sought to cancel was executed on November 26, 1917, by H. L. Brooks and wife, Mrs. Lee Brooks, as lessors, to C. H. Russell, as lessee, and covers 175 acres of land situated in Young county and described in the lease by metes and bounds.

The lease does not purport to convey the oil and gas in place, but recites that it is "for the sole and only purpose of mining and operating for oil and gas, and laying pipe lines, and building tanks, power stations and structures thereon to produce, save and take care of said products" on the land described. It purports to have been executed for valuable considerations, the receipt of which was acknowledged, and upon further consideration of the covenants and agreements on the part of the lessee in the lease. The lease recites that the considerations and covenants of the lessor stated "are the sole and only considerations for the execution of this lease." By its terms it was to continue for 10 years and it contains no covenant for drilling or development, nor does it contain any condition for forfeiture or defeasance.

The undisputed facts show that the lease in question was but one of a group of some ten separate leases covering some 6,000 acres of land and referred to in the procedings as a community lease, and the present action for cancellation of the Brooks lease is based

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

upon a contract entered into on the 14th day of January, 1919, executed by the appellant C. H. Russell, on the one part, and by the appellee Brooks and nine other lessors, on the other part. The contract refers in general terms to the oil leases of the parties and recites that they were executed and acknowledged jointly upon the consideration that certain drilling developments were to be made either on or in close proximity to said leases and that C. H. Russell had entered into a drilling contract under date of January 4, 1919, with one E. B. Lynn which provided that Lynn should within 90 days from January, 4, 1919, begin a test well on part of the property and on or before August 5, 1919, begin another well on or near said property and complete both wells with due diligence.

The contract further recited that Lynn had given a bond for $7,500 to guarantee the performance of the covenants and conditions of the drilling contract and that "in consideration of the premises" the signers other than C. H. Russell "thereby consent to and approve of and ratify the said drilling contract and also the acceptance of said bond guaranteeing the same, and also the integrity of the leases upon which the same is based, in all respects." Russell on his part covenanted that he held the bond guaranteeing the drilling contract and also guaranteeing the integrity of the leases upon which the same was based, and further that he held said bond for the benefit and protection of the lessors whose names were subscribed to the contract. The contract contained this further provision which we specially notice:

"It is further understood and agreed that should drilling operations, upon terms and conditions outlined in said contract be not commenced on or before April 4, 1919, that C. H. Russell agrees to the cancellation of all leases which the undersigned has granted to him and this instrument shall act as automatically canceling said leases and same shall become null and void upon April 5, 1919, provided lessors surrender and return to C. H. Russell all certificates of stock in the Planters' Co-operative Oil & Gas Company and any money received by them as consideration for said leases."

The plaintiff Brooks alleged that the defendant Russell had not begun or caused to be begun a test well on any part of the property comprehended within the leases. referred to in the contract of January 14, 1919, either within 90 days from January 4, 1919, or upon August 5, 1919, as specified in the Lynn drilling contract, and that hence by the very terms of the contract of the 14th day of January, 1919, the lease he seeks to cancel automatically becomes of no further force or effect. It was further alleged, in substance, that if the contract by its terms did not provide that a failure to begin opera-

tions on the second well, to wit, on August 5, 1919, should operate as automatically canceling the lease in question, such in fact was the agreement and understanding and that the same had been omitted from the written instrument either by mutual mistake or fraud.

The case was submitted to a jury upon special issues, and among other things it was found, in effect, that the defendant Russell in good faith began drilling operations on the first well on or before April 4, 1919, the date specified in the drilling contract; that the plaintiff Brooks and the defendant Russell believed, and it was so agreed, at the time they executed the contract of January 14, 1919, that a failure to begin drilling a second well on or before August 5, 1919, would cancel the lease, but that the omission of such provision in the contract was not because of any fraud on the part of C. H. Russell. The jury further found that defendant Russell continued the drilling operations on the first well on and after April 4, 1919; but that operations on the second well had not been begun on or before August 5, 1919. The findings were to the further effect that the plaintiff Brooks did not know that after August 5th the defendant was continuing the drilling operations on the second well at a large outlay of money.

No brief has been filed in behalf of appellee Brooks. We have, however, as carefully as we could, considered appellant's brief, the pleadings in the case, and the statement of facts, and are of the opinion that the judgment should be reversed for several reasons that we shall briefly note.

[1, 2] From what we have already shown, it is apparent that the contract of January 14, 1919, does not in express terms provide that a failure to begin operations in the drilling of a well on August 5, 1919, will operate automatically to cancel the leases referred to in the contract, nor does the original lease of the appellee and his wife specifically provide for drilling at any time or provide that a failure to drill should operate as a forfeiture. True it is that the original lease carried with it an implied obligation to in good faith and with reasonable diligence proceed to drill upon the lands comprehended by the leases composing the community leases, but there is no allegation in appellee's petition nor is there any evidence or finding to the effect that the lease in question was subject to forfeiture on the ground of abandonment or failure to exercise diligence in the effort to develop prior to January 14, 1919, at which time the contract upon which appellee relies was executed and which in express terms, as already noted, expressly confirmed and ratified the leases of 1917, which included appellee's lease. Therefore, the sole support of the judgment

in appellee's favor is the contract of January 14, 1919, and this contract, under the evidence, we think, fails to support the judgment. Appellant testified distinctly that the contract expressed fully the agreement of the parties and denied, in effect, that any omission was intended, and hence it may be said that it is doubtful whether the allegations of mutual mistake are supported; it having been further shown that the contract at the time of its execution was read over to and passed around among the several lessors signing it, with ample opportunity on the part of appellee as well as others to read it. But if it be assumed that the contract should now be read as providing that a failure to begin operations for the drilling of the second well on August 5, 1919, automatically forfeited and rendered of no further force and effect the leases referred to in that contract, nevertheless there is neither allegation nor proof, as we construe the record and statement of facts, that any consideration of any character proceeded from the lessors signing the instrument to Russell or any other person or corporation made defendant in the suit. It seems apparent from what we have said that at the time of the making of that contract Russell was vested with a valid contractual right to explore the leasehold lands for gas and oil; that it had not therefore been forfeited nor was it subject then to forefeiture, and while there was evidence tending to show that the lessors were anxious for development and that development was contemplated, it was not, as stated, either proved or shown that Russell had been guilty of any such want of diligence as to subject his leases to forfeiture. The written contract indeed amounts to a solemn declaration that no ground for forfeiture then existed, nothing was paid to Brooks or any of the other defendants as a consideration for the execution of the lease, and nothing is better settled than that to be enforceable a contract, written or verbal, must be supported by a sufficient consideration. See Richarz v. Wolcken, 34 Tex. 102; Walker v. Tomlinson, 44 Tex. Civ. App. 446, 98 S. W. 906; Am. Natl. Ins. Co. v. Teague (Tex Com. App.) 237 S. W. 248; Whitsett v. Carney (Tex. Civ. App.) 124 S. W. 443.

[3] In this connection we desire to further say that, while appellant Russell was alone named as lessee, yet there is evidence tending to show that he in fact was acting not only for himself but also as a general agent, manager, or trustee for the other defendants named in the petition of the plaintiff, one or more or all of them being originally and at the time of the execution of the contract of January 14, 1919, interested in and part owners of the rights conferred by the leases under consideration, and there is neither allegation nor proof that Russell had any authority whatever to surrender the rights of the other defendants by the execution of the contract relied upon as a ground of forfeiture. Russell was, at least apparently, but the general agent or manager of the other defendants in the suit interested in the subject-matter, and his authority as such cannot be extended by presumption so as to authorize a surrender of existing rights. See 31 Cyc. 1341; 1 Mechem on Agency, §§ 836–990.

[4] For the reasons indicated, we therefore conclude that the judgment must be reversed and the cause remanded, but in view of the reversal we will very briefly notice several questions relating to the trial presented in the brief of appellant. Appellant pleaded and it was shown that one Shepard also leased one of the tracts of land included in what has been termed the community lease and that Shepard, on the same day that appellee filed his suit, filed suit for the cancellation of his lease; that the two petitions are substantially identical, predicated upon identical reasons, and that evidence in the Shepard case was in all essential particulars the same as in the case now before us, and that upon a trial of the Shepard case he was denied the relief he sought and that the judgment against him has never been overruled or disturbed. Appellant accordingly pleaded the judgment against Shepard as res adjudicata. We think however that the trial court correctly sustained exceptions to this plea. It is not alleged that appellee was interested in the tract of land leased by Shepard, or that Shepard was interested in the land leased by appellee. In the Shepard case no complaint was made in behalf of appellant of a want of proper parties and the prayer for relief in each case was separate and distinct. It is true both relied for forfeiture upon the contract of January 14, 1919, but it seems evident that this contract was relied upon as evidence merely of the right to cancel as the several parties prayed for.

[5] There was evidence tending to show that some time in July, 1917, prior to the execution of the lease under consideration in November, 1917, that a Mr. Terrell and a Mr. Herring, representing themselves to be agents for one of the Oklahoma corporations made defendants, secured leases upon representations of solvency, etc., which are perhaps subject to the construction that they were false or fraudulent, which leases were later substituted by those under consideration. The reason for the substitution, as explained by the witness Russell, was that in their original form it had been proven to be difficult to secure drilling contracts. This explanatory evidence was uncontradicted, and there was no allegation that the lease under consideration was subject to forfeiture by

reason of any fraudulent representation on the part of either Terrell or Herring. Indeed, the sole ground in this suit for forfeiture consists of the allegations to the effect that appellant had failed to comply with the requirements of the contract of January 14, 1919. The evidence of the representations of Mr. Terrell and Mr. Herring and of one Wiley Stephens, of the character indicated, was wholly irrelevant and objectionable.

Appellant, among other things, pleaded and testified that in fact he had secured the beginning of drilling operations on the second well on or before August 5, 1919, as specified in the drilling contract of Lynn, and that on or before said date the selected ground had been cleared off and what is termed a Sparta rig, capable of going down 1,050 feet or more, had been hauled on the land, and on August 3d tools and other equipment had been put on the lease; that in a conversation with appellee and another one of the lessors exception was made to the sufficiency of the Sparta rig and that appellant thereupon suggested that he would see the drilling contractor and try to induce the substitution of a standard rig; that appellee and the other lessor agreed that this might be done, which in fact was later done; that, after a delay caused by congested conditions existing at the time, the second well was drilled, without protest on appellee's part, to a depth of 900 feet at the date of the institution of this suit, and later completed to the required depth and oil secured. These facts were pleaded as an estoppel. While the jury found in effect that plaintiff Brooks was without knowledge of the drilling of the second well, he, in testifying, did not deny appellant's evidence, above noted, and we strongly incline to the view that, if appellant's action in this respect was as he states it, and the delay in the beginning of the drilling of the second well was caused as he explains it, the mere unexplained fact that appellee was without knowledge of the actual beginning of the well ought not to be considered a sufficient ground in equity to entitle him to a cancellation of his lease on the only ground he attempts to show. The evidence before us undoubtedly shows that appellee actively interested himself from time to time in the development of the territory in question and had heard that two wells were being drilled, and just how it happened that he was not cognizant of the drilling of the second well seems not to be explained. However, we need not dwell on this feature of the case inasmuch as on another trial it may all be more fully developed.

Nothing further occurs to us as necessary to notice, but the judgment will be reversed and the cause remanded, for the reasons stated.