## MILES et al. v. ATLANTA NAT. BANK.
### No. 4439.

Court of Civil Appeals of Texas.
Texarkana.

March 29, 1934.

Rehearing Denied April 12, 1934.

934

Carney & Carney, of Atlanta, for appellants.

Ben A. Harper, of Tyler, for appellee.

LEVY, Justice (after stating the case as above).

It is urged under proper assignments of error that, under section 50 of article 16 of the Constitution of the state, the present deed of trust was invalid and unenforceable, and the bank was not entitled to have the transaction adjudged creative of a mortgage lien on the property. Section 50 of article 16 of the Constitution expressly protects "from forced sale" the "homestead of a family." And after the death of either the husband or wife its character of homestead remains in its integrity and entirety as against creditors. As further provided, "no mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife.". Inge and Boring v. Cain, 65 Tex. 75. But as construed, there is difference in the language between the exemption expressed and the limitation upon liens expressed. The "homestead of a family" generally is exempt as against creditors through forced sale. The exemption from forced sale as expressed furnishes no rule for the power to incumber the homestead with a lien after the death of the wife or husband. As construed, the restriction placed on the power of the husband to incumber the homestead does not extend to the time and apply after he has become a widower, but exists and applies only while he has a wife living. That construction arises out of the language making ineffective a lien created "by the husband alone or together with his wife." As observed in the case of Astugueville v. Loustaunau, 61 Tex. 233: "Taking all of section 50, art. 16, of the constitution into consideration, it would seem, however, that there was no restriction intended to be placed on the owner of property used as homestead, in reference to his power to sell or incumber it with liens, unless such person have a wife. It imposes a restriction on the power of the

husband to sell the homestead only when he is a married man, and in such case a sale cannot be made without the wife's consent given in the manner prescribed by law. If, however, the head of a family be an unmarried man, he may sell a homestead which he owns just as he may sell any other property; and it is ordinarily true that the owner who has an unrestricted power to sell may mortgage."

Accordingly it is held that either a widower or widow is empowered to mortgage the property, although occupied as a homestead with persons constituting a family, and although the same is exempt from execution. Hensel v. Building & Loan Ass'n, 85 Tex. 215, 20 S. W. 116; Harle v. Richards, 78 Tex. 80, 14 S. W. 257; Watts v. Miller, 76 Tex. 13, 13 S. W. 16; Smith v. Von Hutton, 75 Tex. 625, 13 S. W. 18; Lacy v. Rollins, 74 Tex. 566, 12 S. W. 314; Kiolbassa v. Raley, 1 Tex. Civ. App. 165, 23 S. W. 253; Melton v. Beasley, 56 Tex. Civ. App. 537, 121 S. W. 574. In such status of widower or widow, he or she may not invoke the plea of homestead to defeat the mortgage or deed of trust given by such widower or widow. Wiener v. Zweib, 105 Tex. 262, 141 S. W. 771, 147 S. W. 867; Bateman v. Pool, 84 Tex. 405, 19 S. W. 552; Dabney v. Schutze (Tex. Com. App.) 228 S. W. 176; Moore v. Poole (Tex. Civ. App.) 25 S. W. 802; Spencer v. Schell, 107 Tex. 44, 173 S. W. 867. Quoting from Moore v. Poole (Tex. Civ. App.) 25 S. W. 802, 803: "The fact that the family may consist, in whole or in part, of the owner's minor children, does not, in our opinion, affect the question. * * * The constitutional prohibition against homestead incumbrance is held to be limited to persons who are married; and, if that relation does not exist, it is not perceived how the existence of another and different relation can be of any consequence."

Further, in Spencer v. Schell, 107 Tex. 44, 173 S. W. 867: "There can be no doubt of the full power of a surviving husband or wife to mortgage the homestead owned as his or her separate estate, or the community homestead to secure a community debt, although it constitutes, at the time, the home of other constituents of the family."

If such an interpretation may be considered erroneous, as claimed, it has long prevailed. And, even if there is substantial doubt as to the true meaning of the enactment, the expression of the courts in regard to it is not to be overlooked and is entitled to consideration and should be regarded as decisive.

The further point for decision is that of whether or not the statement in evidence has the effect to make the deed of trust ineffective and not valid for want of intention on the part of the grantors to deliver and of the bank to accept. Mr. T. A. Miles testified in substance that in procuring the execution of the deed of trust the cashier of the bank stated to him "the object in doing that was not for the home, he did not want the home, they just wanted to show the bank examiner when he came around that they had a good showing, and in good faith. He said it wasn't the home he was after." Miss Mamie Miles testified in substance that "shortly after I executed and acknowledged this deed of trust" she had the cashier come down to her home and there had a conversation with him about the deed of trust, viz.: "I told the cashier I was worried about the house and was afraid I might lose it; that it was home to me, and all I had; I asked him what he thought about it, and he told me not to worry, they were not going to take the home. I felt easy about it after that. * * * I would not have executed this deed of trust if I had known that it was intended as a deed of trust upon which a foreclosure might be had and the home taken away." Mr. Robert Miles testified in substance that he did not sign and acknowledge the deed of trust until after the cashier stated to him: " 'The bank is not going to take the property, the bank wants the deed of trust to show the bank examiner and show that the bank is acting in good faith;' and I said, 'Well, if that is the way, I will sign the paper.' The reason I signed it was what the cashier told me about it." The deed of trust, after the signing and acknowledgment, was passed into the bank's possession and control and was placed on record. There is no evidence that in leaving the instrument in the possession and control of the bank the grantors or either of them reserved the right of recall or to have it returned on the happening of a certain contingency. And it is not claimed that the possession and control of the instrument was taken by the cashier fraudulently or wrongfully. The uncontradicted testimony shows the execution and acknowledgment of the instrument by the grantors and the intention and purpose of delivering it into the hands and control of the cashier for the bank. Each grantor intended that it should actually pass into the possession of the bank, and each of them understood that the cashier for the bank would take actual possession and control of it. It was claimed only by some of the grantors, not that they did not intend a

present unconditional delivery of the instrument to the cashier for the bank, but that they were induced to execute the instrument upon promissory representations of the cashier that the bank would not enforce its terms, but would keep it for use and purpose only of assurance to the bank examiner that the bank was acting in good faith respecting the indebtedness due the bank by T. A. Miles. The main question at issue, therefore, in the circumstances, would not be that of whether or not a present actual and unconditional delivery of the instrument had been made by the grantors to the cashier, but simply that of the purpose of the parties in executing the conveyance or mortgage. The two questions are legally distinct and apart. When a present unconditional delivery has been made, the conveyance or mortgage becomes immediately operative. But relief would be obtained by way of rescission and cancellation of the conveyance or mortgage, although a present unconditional delivery had been made, when the execution was influenced by promissory representations made for the purpose and there had been failure to perform or the nonfulfillment of the same, and such representations were of a character to justify the rescission or cancellation.

The further point is made and urged for decision that the evidence tended to show, and the issue was for the jury, that the execution of the deed of trust was obtained through statements in evidence of the cashier and such statements were of such character as to justify the cancellation of the deed of trust. The cashier denied making the statements in evidence. And it is affirmatively shown that the assent of Miss Mamie Miles to the signing and acknowledging of the deed of trust was not induced by the alleged representations or statements of the cashier; that she did not enter into the contract on the specific ground or under the influence of representations or assurance of the cashier. According to her testimony, the alleged statements of the cashier were made after she had "executed and acknowledged this deed of trust." The evidence may be considered as going to show that T. A. and Robert Miles signed and acknowledged the deed of trust after the cashier had stated that the bank wanted the deed of trust to show or give assurance to the bank examiner of the good faith of the bank, and that the bank did not want the house and would not foreclose the lien on the house. In this connection it appears that T. A. Miles owed the bank and had given a deed of trust upon his one-half undivided interest in the homestead. That was

not sufficient security for the loan according to the report of the bank examiner. The bank wanted payment of the indebtedness or larger security. The cashier for the bank was endeavoring to obtain more security. The deed of trust executed was substituting or purporting to substitute a new lien. The transaction being wholly with the cashier of the bank, an officer of the bank, the effect to charge the bank with responsibility for his promissory statements would rest entirely upon his power in that direction. The rule is general and uniform, limiting the responsibility of corporations for the acts of their officers and agents, in the absence of express authority to do the particular act to those performed in the discharge of their ordinary duties in the usual course of business, and within the sphere and scope of such duties. The power to bind the corporation can only be presumed to exist in its officers and agents within the scope of its ordinary business and their ordinary duties or the incidental powers of the corporation. 6 Tex. Jur. § 69, p. 202; 1 Clark & Skyles on Agency, § 209, p. 497; 7 C. J. 646, p. 783. Cashiers of banks are duly authorized agents for the transaction of such business as pertains to their office. He is ordinarily a financial manager and agent of the bank. 7 C. J. § 160, p. 549; Ledgerwood v. Dashiell (Tex. Civ. App.) 177 S. W. 1010. And it may be deemed affirmatively proven that the cashier had authority from the loan committee to take the deed of trust in evidence to secure the payment of the note for $2,500. Therefore the taking of the new note and the substituted lien on all the property was within the sphere and scope of the duties of the cashier as such, because it was a transaction in which he had express authority to undertake to perform for the bank as such. That was the extent of his authority to take the new note and the substituted lien. He was not authorized to make the promissory representations in evidence. The authority could not be assumed to extend to make the representations complained of, although the transaction in question of taking the note and deed of trust was within the scope of his express authority. Rushing v. Bank (Tex. Civ. App.) 162 S. W. 460; State Bank v. Forsyth, 41 Mont. 249, 108 P. 914, 28 L. R. A. (N. S.) 501. But assume for the moment that the effect of the statements of the cashier was the same as if they were made by him as an authorized agent of the bank; that the two grantors named were misled into executing the deed of trust upon the promissory statement substantially that the bank would keep

the deed of trust to show the bank examiner the good faith of the bank respecting the indebtedness and did not want the house and would not foreclose the lien on the house. The correct solution of the question is that of whether or not the representations were of such a character as to justify rescission and cancellation of the deed of trust. It would not seem so in the view of the case upon similar facts of Jackson v. Bank (Tex. Civ. App.) 46 S. W. 295, 296. The same in Kulenkamp v. Groff, 71 Mich. 675, 40 N. W. 57, 58, 1 L. R. A. 594, 15 Am. St. Rep. 283. In the Jackson Case, supra, the promise was made by the cashier to induce the signing of a note, that it "would only be used by said payee (bank) for the purpose of showing the assets of said bank, in the place of said lands, which would be charged off the books of payee (bank), and that said notes should not be put in circulation, nor used for any other purpose." The court held that the statements, amounting simply to a promise to perform certain things in the future concerning the notes, were "not the character of fraud that the law would relieve against." In the Kulenkamp Case, supra, the promise was made by the payee to induce the signing of a note that he would "hold the note, and see that I (the maker) did not have any trouble." The court held: "As far as the claim of fraud is concerned it is not tenable. The signature of Groff was not procured by false pretenses, by the statement of any fact as existing which did not exist, but upon false promises which have not been performed. It is no more nor less than the non-performance of an oral agreement made at the time the note was signed, and which oral agreement was totally at variance with the terms of the written contract as set forth in the note. This cannot be considered such a fraud as would nullify the note. If proof of this unperformed agreement not to hold Groff upon this note, in plain contradiction to its terms, can be admitted to destroy his liability upon it, then any unperformed oral agreement made at the time a written contract or note is executed may be admitted under the claim of fraud, to defeat the terms and purpose of the written agreement. The maker of a note, as well as the surety or indorser, may say, 'It is true, I signed the note, but it was agreed I was not to pay it, and the collection of it is a fraud upon me.' Written instruments, under the admission and use of such proof to defeat them, would be of but little value, and altogether uncertain, and of no more strength than oral agreements."

It is believed the trial court did not err in peremptorily instructing the verdict.

■ A serious question is presented in the respect of the description of the property upon which the lien was taken. The judgment adds after the description by metes and bounds the words, "and being the place known as the T. A. Miles home." The added words would cover a tract of larger size than the description in deed of trust. It would in fact alter the description, and not be a reference merely to the premises claimed. Ordinarily the error may be corrected by reforming the judgment and excluding the words quoted. In the view, though, that there is mistake in the field notes of the deed of trust, and that it was intended to cover the homestead tract, it is concluded that the only way of relief is to reverse the judgment and remand the cause for another trial. In the absence of pleading asking reformation of the field notes contained in the deed of trust upon the ground of mistake, the error of description could not be cured.

The judgment is accordingly reversed upon the ground stated, and the cause remanded for another trial.