**BELL v. MOODY.**

No. 11106.

Court of Civil Appeals of Texas. Galveston.
Jan. 30, 1941.

Rehearing Denied Feb. 20, 1941.

Bailey & Blum, of Houston (Ben Blum, of Houston, of counsel), for appellant.

Frank S. Anderson and Charles G. Dibrell, Jr., both of Galveston, for appellee.

CODY, Justice.

This is a suit by appellee against appellant for the unpaid balance on appellant's note after there had been credited thereon the proceeds realized from a trustee's foreclosure sale of certain real estate. Appellant's defense was a plea of estoppel; that appellee, acting through J. B. Mills, who had either express, implied or apparent authority, agreed that if appellant would not attend the foreclosure sale, no deficiency judgment would be taken against him on the note, etc. Appellee filed a sworn denial of authority in J. B. Mills to make the alleged agreement. A detailed statement of facts is revealed from the special issues which were submitted to the jury, and the jury's answers thereto. The Court rendered judgment for appellee non obstante veredicto.

The substance of the issues and the jury's answers thereto, so far as material, is as follows:

1. Plaintiff, W. L. Moody, Jr., is conducting a private banking business in the County of Galveston under the name of W. L. Moody & Company, Bankers, of which he is the sole owner.

2. Defendant, George W. Bell, Jr., on June 30, 1931, for value received, made and delivered to plaintiff his certain promissory note for the principal sum of $8,498.69, due two years after date, with interest thereon at the rate of 7% per annum, secured by a deed of trust executed by the defendant, of even date therewith, to J. B. Mills, trustee, covering the real estate therein described.

3. That on July 7, 1933, the maturity of the indebtedness was duly extended to July 7, 1934.

4. That on July 7, 1934, the maturity of the indebtedness was duly extended to July 7, 1935.

5. That on July 7, 1935, the maturity of the indebtedness was duly extended to July 7, 1936.

6. That on July 7, 1936, the maturity of the indebtedness was duly extended to July 7, 1937.

8. That defendant made default in payment of said indebtedness.

9. That said default continued to September 7, 1937.

10. That on September 7, 1937, the property which was covered by the deed of trust was sold by J. B. Mills, trustee.

11. That the property covered by the deed of trust was sold to plaintiff at the trustee's sale.

12. That there was realized from said sale the sum of $3,350.

13. That there was owing, at the time of the sale, on the indebtedness the sum of $8,973.25.

14. That there remained unpaid on said indebtedness on March 8, 1940, the sum of $7,166.84.

15, 16, 17 and 18. The answers to these special issues disclose that the reasonable market value of the various real estate covered by the deed of trust at the time of the trustee's sale totalled $2,950.

19. That prior to the foreclosure on the property involved, J. B. Mills agreed with defendant not to take a deficiency judgment against him.

20. That John B. Mills was the vice-president, general manager, agent and employee of W. L. Moody & Company, Bankers, plaintiff, during the months of August and September, 1937, prior to the foreclosure sale.

21. That John B. Mills, when he made the agreement not to take a deficiency judgment against defendant, was acting as vice-president, general manager, agent and employee of plaintiff.

22. That when John B. Mills made the agreement with defendant, he was expressly authorized to make said agreement as vice-president, general manager, agent and employee of plaintiff.

23. That when John B. Mills made the agreement not to take a deficiency judgment against defendant, he had the apparent authority to make said agreement in the capacity of vice-president, general manager, agent and employee of plaintiff.

24. That the defendant would have attended the foreclosure sale and bid on said property had not John B. Mills, acting for plaintiff, agreed with him not to take a deficiency judgment.

25. That defendant relied on the agreement with John B. Mills, acting as vice-president, agent, employee, and general manager of plaintiff, and in relying upon said agreement did not attend the foreclosure sale, and thereby changed his position.

The first fourteen special issues were not defensive and appellant makes no contention that any of the answers thereto entitled him to a judgment.

Answers to special issues 15 to 18, inclusive, establish the reasonable value of appellant's property covered by the deed of trust at the time of the foreclosure sale as being $2,950. It is asserted by appellee, and not denied by appellant, that appellant had suffered the property to become delinquent as to the payment of taxes to the extent of $1,200. The property was worth therefore at the time of the foreclosure sale $1,200 less than its market value of $2,950 or $1,750. The amount of the indebtedness secured by this $1,750 worth of property at the time of the foreclosure sale was $8,973.25. The amount for which appellee bid in this property worth $1,750 was $3,350. As a matter of simple calculation, it appears therefore that appellee bid in property worth $1,750 for $1,600 more than it was worth.

■ Now in order to sustain a plea of estoppel the party asserting such must prove that he was misled by the party against him to his injury.

`· "The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position, in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated. Furthermore, an equitable estoppel cannot arise except when justice to the rights of others demands. It was never intended to work a positive gain to a party. Its whole office is to protect him from a loss which, but for the estoppel, he could not escape. Consequently the estoppel should be limited to what may be necessary to put the parties in the same relative position which they would have occupied if the predicate of the estoppel had never existed." 10 R.C.L. 697, 698, par. 25.

Again, as stated in 19 Amer.Jur. 735, par. 85: "Estoppel rests largely upon injury or prejudice to the rights of him who asserts it. Since the function and purpose of the doctrine are the prevention of fraud and injustice, there can be no estoppel where there is no loss, injury, damage, or prejudice to the party claiming it. Moreover, the injury or prejudice involved must be actual and substantial, and not merely technical or formal."

To the same effect: Jones v. United States, 96 U.S. 24, 24 L.Ed. 644; Nelson v. Wilson, Tex.Civ.App., 97 S.W.2d 287, error refused; Superior Brewing Co. v. Curtis, Tex.Civ.App., 116 S.W.2d 853.

■ It follows, in view of the jury's answers to the special issues just discussed, which establish that appellant suffered no injury through not attending the sale, that the court could not render judgment sustaining appellant's plea of estoppel.

■ In answer to special issue No. 19, the jury found that Mills agreed with defendant not to take a deficiency judgment against him, and in answer to special issues Nos. 20 and 21, that Mills was, at the time they found he made the agreement, the vice-president, general manager, agent and employee of appellee, and in making such agreement was acting as such. The defensive issues Nos. 20 and 21 were evidently submitted to the jury upon the mistaken opinion that a vice-president or general manager, as such, has the implied authority to gratuitously release an indebtedness, or

a part thereof, due his bank. It is elementary that no agent has any implied authority to surrender the vested rights of his principal, or to give away his money or other assets. 2 Tex.Jur. p. 446, par. 51. In Potts v. Wallace, 146 U.S. 689, 13 S.Ct. 196, 201, 36 L.Ed. 1135, it was held:

"The president had no legal power or authority to deplete the coffers of the company, by instructing the treasurer to refuse to accept subscription money when tendered.

"In Bank [of the United States] v. Dunn [31 U.S. 51], 6 Pet. 51 [8 L.Ed. 316], it was held that an agreement by the president and cashier that the indorser on a note shall not be liable on his indorsement does not bind the bank; that it is not the duty of the cashier and president to make such contracts, nor have they the power to bind the bank, except in the discharge of their ordinary duties.

"It is true that if the acts of the President are ratified by the corporation, or if the corporation permits a general course of conduct, or accepts the benefit of his act, they will be bound by it; but the general rule is that the president cannot act or contract for the corporation, except in the course of his usual duties.

"And the rule is still stronger against the power of the president to bind the corporation by giving up its securities or releasing claims in its favor."

See also Miles et al. v. Atlanta National Bank, Tex.Civ.App., 71 S.W.2d 933; Russell v. Brooks, 254 S.W. 404. It would serve no useful purpose to multiply citation of authority.

There is no evidence in the record to support the jury finding that John B. Mills was expressly authorized to make the agreement in question (special issue No. 22) as vice-president, general manager, etc. W. L. Moody, Jr., testified that he was the sole owner of "W. L. Moody & Co., Bankers", an unincorporated banking business. On cross-examination he was asked: "Didn't you give John Mills a power of attorney to run the bank in 1937?" To which he answered: "Probably, because he was running the bank. I don't know when it was." The power of attorney referred to was one given J. B. Mills and a son of W. L. Moody, Jr., under which, when acting jointly, they could execute deeds to real estate, after having been expressly directed by W. L. Moody so to do, though a purchaser was authorized to rely on a recitation in said deed to such effect. But the testimony that J. B. Mills was authorized to run the bank was, as we have seen, not testimony that he was authorized to gratuitously release a debtor from liability on a note. We fail to see, however, that, had there been evidence to support the answer to special issue No. 22, appellant would have been entitled to prevail on his plea of estoppel. And this we take to be true because appellant failed to show any injury or prejudice resulted to him as pointed out above.

There is no evidence in the record to support the jury finding to the effect that Mills had the apparent authority to make the agreement in question, as vice-president, general manager, etc., (special issue No. 23). " 'Where an act for which it is sought to hold the principal was within the authority actually conferred by the principal, whether expressly or impliedly * * *, it is not necessary for the third person to show that he had notice of that fact and acted on the faith of it' [Authority]; but, where it is sought to hold the principal on the ground of 'apparent authority,' it is necessary 'that the person dealing with the agent was aware of the principal's acts from which the apparent authority is deduced, and that he dealt with the agent in reliance therein in good faith and in the exercise of reasonable prudence.' 2 C.J. p. 575, § 215.

"It is not permissible to take into consideration, as a basis for a conclusion as to the extent of apparent authority, the power that the agent pretends to have or his activities that are unknown to and unratified by the principal." Citing authorities. Continental Oil Co. v. Baxter, Tex.Civ.App., 59 S.W.2d 463, 466.

Appellant's plea of estoppel is, of course, in the nature of confession and avoidance. Appellee was admittedly entitled to recover the unpaid balance of the note, unless appellant established his plea of equitable estoppel. It having been found that no injury or prejudice to his rights resulted from the acts complained of, appellant failed to establish an element essential to support his plea. No useful purpose therefore will be served by discussing special issues Nos. 24 and 25.

It is appellant's further contention that his pleading setting up the agreement in question, and his acceptance by acting on it, constitutes a declaration upon a bind-

ing contract. The proof failed to establish any contract binding on appellee.

The court did not err in rendering judgment for appellee, and it is accordingly affirmed.

Affirmed.