In the Matter of the Application of the CITY OF NEW YORK Relative to Acquiring Title to Real Property Required for the Opening and Extension of One Hundred and Sixty-fifth Street in the Borough of Queens.

LLOYDS FIRST MORTGAGE CORPORATION, Appellant; BAGDAD TRADERS, INC., et al., Respondents.

(Argued November 16, 1931; decided January 5, 1932.)

*Henry Herz* and *Isaac E. Bermant* for appellant. The conclusion of law that the award should be paid to the appellant is sustained by the evidence. (*Van Winkle* v. *Van Winkle*, 184 N. Y. 193; *Hennessey* v. *Murdock*, 137 N. Y. 317; *Haberman* v. *Baker*, 128 N. Y. 253; *White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65; *Matter of Opening Hamilton Road*, 144 App. Div. 702; *Pell* v. *Pell*, 65 App. Div. 388; 169 N. Y. 607; *Matter of City of New York [Avenue D]*, 200 N. Y. 536; *Forster* v. *Scott*, 136 N. Y. 577; *Matter of Rhinelander*, 68 N. Y. 105; *City of Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.*, 168 N. Y. 610; *Hollaway* v. *Southmayd*, 139 N. Y. 390; *Matter of West One Hundred & Seventy-eighth Street*, 135 App. Div. 520; 145 App. Div. 918; 203 N. Y. 570; *Trowbridge* v. *Ehrich*, 191 N. Y. 361; *Smith* v. *Smith*, 120 App. Div. 278; 193 N. Y. 667; *Wilson* v. *Ford*, 209 N. Y. 186; *Mott* v. *Eno*, 181 N. Y. 346; *Blackman* v. *Striker*, 142 N. Y. 555; *Knowlton* v. *Atkins*, 134 N. Y. 313; *Miner* v. *Brown*, 133 N. Y. 308; *Heath* v. *Hewitt*, 127 N. Y. 166; *Herman* v.

*Roberts,* 119 N. Y. 37; *Mott* v. *Richtmyer,* 57 N. Y. 49; *Bridger* v. *Pierson,* 45 N. Y. 601.) As between grantor and grantee, a street is created when lands, clearly defined as to extent and location, are devoted to that end by the grant, whether it is then in the condition to use as a street or not, although it could only be a street on paper until actually opened. (*Matter of Ladue,* 118 N. Y. 213; *Mott* v. *Mott,* 68 N. Y. 246; *Wallace* v. *Fee,* 50 N. Y. 695; *Perrin* v. *N. Y. C. R. R. Co.,* 36 N. Y. 120; *Wagner* v. *T. U. R. R. Co.,* 25 N. Y. 526; *Bissell* v. *N. Y. C. R. R. Co.,* 23 N. Y. 61; *Geddes Coarse Salt Co.* v. *Niagara, Lockport & Ontario Power Co.,* 207 N. Y. 500; *Trowbridge* v. *Ehrich,* 191 N. Y. 361; *Matter of Opening Eleventh Ave.,* 81 N. Y. 436; *Terrett* v. *N. Y. & Bklyn. Steam Sawmill & Lumber Co.,* 49 N. Y. 666.) By virtue of its building loan mortgage appellant had a first lien on the premises described therein, including the damage parcels, for the full amount of principal indebtedness actually advanced by it under the building loan agreement. (*Hyman* v. *Hauff,* 138 N. Y. 48; *Fairbanks* v. *Sargent,* 104 N. Y. 108; *York Mortgage Corp.* v. *Clotar Constr. Corp.,* 254 N. Y. 123.) As holder of first mortgage on the damage parcels appellant was entitled to have the award applied in payment of its deficiency judgment. (*Brunswick Constr. Co.* v. *Burden,* 116 App. Div. 468; *Lambert* v. *Krum,* 121 Misc. Rep. 170; *King* v. *Mayor,* 102 N. Y. 171; *Matter of Scheier,* 159 App. Div. 861; 211 N. Y. 548; *Matter of Opening Hamilton Street,* 144 App. Div. 702; *Matter of City of New York* [*Newtown Creek Bridge*], 128 App. Div. 150; 195 N. Y. 527; *Harris* v. *Kingston Realty Co.,* 116 App. Div. 704; *Matter of Mayor* [*Trinity Avenue*], 116 App. Div. 252.)

*Michael M. Helfgott* for Yarm Realty and Holding Corporation, respondent. The deed did not convey any title or interest in the land acquired by the city of New York and for which the award was made. (*Bullard*

v. *N. Y., N. H. & H. R. R. Co.*, 60 N. E. Rep. 380;
*Armstrong* v. *Dubois*, 90 N. Y. 101; *City of Geneva* v.
*Henson*, 195 N. Y. 464; *Ogden* v. *Jennings*, 62 N. Y. 530.)
The construction of the description contained in the deed
and of the " together " clause was a question of law and
not of fact. (*Muldoon* v. *Deline*, 135 N. Y. 150; *City of
Geneva* v. *Henson*, 195 N. Y. 447; *Uihlein* v. *Matthews*, 172
N. Y. 154; *Morris* v. *Ward*, 36 N. Y. 587; *Alfalfa Lumber
Co.* v. *Mudgett*, 199 S. W. Rep. 337; *Goulding* v. *Blanchard*,
178 Ala. 298.)

*William Gold* and *George Goldberg* for Bagdad Traders,
Inc., respondent. The appellant never acquired any
title or interest, either legal or equitable, in the land
acquired by the city of New York, and for which the
award was made. (*Bullard* v. *N. Y., N. H. & H. R. R.
Co.*, 60 N. E. Rep. 380.) The area included within
the damage parcels which at the time of conveyance and
mortgage was no part of the street, cannot be held to
have passed to the mortgagee as appurtenant to the land
actually conveyed and mortgaged and definitely described
in the deed and mortgage. (*Armstrong* v. *DuBois*, 90
N. Y. 101; *City of Geneva* v. *Henson*, 195 N. Y. 464.)
Nor can the area included within the damage parcels which
at the time of conveyance and mortgage was no part of
the street, be construed to have been conveyed herein
by reason of the alleged necessity or convenience to the
actual parcel conveyed, nor can the title to said area be
adjudged to have been conveyed by implication. (*Ogden*
v. *Jennings*, 62 N. Y. 530.) The parties to the written
instruments are controlled by their intent, which, the
instruments being unambiguous, must be ascertained
strictly and entirely from the language employed therein.
(*Muldoon* v. *Deline*, 135 N. Y. 153; *City of Geneva* v.
*Henson*, 195 N. Y. 464; *Uihlein* v. *Matthews*, 172 N. Y.
159; *Morris* v. *Ward*, 36 N. Y. 596.) The description in
the deed can in nowise be considered as a conveyance

pursuant to the map. (*Singer* v. *Mayor*, 47 App. Div. 47.)

O'BRIEN, J. Puntine street, otherwise known as One Hundred and Sixty-fifth street, as laid out on the map or plan of the city of New York for a distance approximately one hundred and twenty-five feet south of the northerly line of Jamaica avenue in the borough of Queens, was a highway of varying width. In order to correct this irregularity, the city altered the existing map and adopted a new one, by which the width of Puntine street became substantially uniform, and instituted a condemnation proceeding to acquire title to the land lying between the old easterly line and the proposed new easterly line of the street. At a time when the parties had knowledge of the existence of a new topographical map and of the pendency of the condemnation proceeding and of the boundaries of the damage parcels on the damage map, the respondent Yarm Realty and Holding Corporation, the owner of premises abutting on the old easterly line of the street, contracted to sell part of them to the Hurtjam Realty Corporation. In the agreement dated January 7, 1928, the property to be conveyed does not include the area between the old and new lines. The premises contracted to be sold are described as beginning at a point on the easterly side " of the proposed new line " of Puntine street a stated distance south from the intersection of the northerly side of Jamaica avenue with " the said proposed new easterly line " of Puntine street, and running thence southerly along " said easterly side " of Puntine street. In the same agreement is incorporated this provision: " It is understood and agreed between the parties that the land lying between the present line of the easterly side of Puntine street as heretofore laid out and the new proposed line as hereinabove described shall be and is hereby reserved to the seller and shall remain its property free and clear of any claim on the part of the

purchaser and the seller shall be entitled to any and all awards that may be paid or awarded for the taking of any or all the property hereby reserved for the widening of Puntine Street or 165th Street, free and clear of any claim on the part of the purchaser, and free and clear of any easements in favor of the purchaser or the lessee; it being the intent of the seller to create no easements either public or private over and through the land hereby reserved to the seller and lying between the said easterly line of 165th Street, as heretofore laid out and the new proposed easterly line of Puntine or 165th Street."

By this agreement the parties contracted in the clearest terms that the buyer should acquire no title to the lands within the condemnation area nor any right in an award for their taking. The form of the description, running along the proposed new side of the street, excludes all interest in the highway (*Ansorge* v. *Belfer*, 248 N. Y. 145, 149; *Monogram Development Co.* v. *Natben Construction Co.*, 253 N. Y. 320, 322) either as originally laid out or as appearing on the new map.

Encumbered by this agreement, which had the effect of limiting the boundary of its title to the new line of the street, the buyer, prior to closing title, applied to appellant Lloyds First Mortgage Corporation for a loan to be secured by mortgage on the premises contracted to be conveyed. Appellant recognizing that, in the event of a discontinuance of the condemnation proceeding, the purchaser under its agreement would be without frontage on the street, refused to loan on property described as in that agreement and in a proposed deed as then drawn. It insisted upon, and both the buyer and seller consented to, a substituted form of deed which, as prepared by the seller's attorney and executed and delivered January 30, 1928, embraces this additional clause: " Together with all right, title and interest of, in and to the land lying in the street, road or avenue as it *now* or formerly existed in front and adjoining said premises to the center

lines thereof." The clause in the agreement of January 7th relating to the reservation by the seller of all rights in the condemnation area was omitted from the deed. This deed describes the premises as beginning on the "easterly side" of Puntine street a stated distance from its intersection with Jamaica avenue "as said street and avenue are shown on the final Tops. Map of the City of New York" and running thence along the "easterly side" of Puntine street. The mortgage delivered simultaneously with the deed of January 30, 1928, embraces the same description and the "together" clause which had been added to the deed. It also includes the following provision: "The mortgagee agrees that at the time and place of the payment by the City of New York of any award for the legal opening of 165th Street for the taking of the land lying therein as now shown upon the Final Topographical Map, it will deliver a release of such land so taken from the lien of this mortgage without any consideration, providing that there is no default or breach of any of the terms, covenants or provisions of the Building Loan Agreement, Bond and Mortgage made between the parties hereto."

Default in the terms of the mortgage having occurred, appellant foreclosed and entered a deficiency judgment. The city consummated its condemnation proceeding and the question is, which party, the mortgagee or the seller's assignee, Bagdad Traders, Inc., is entitled to the awards for the damage parcels situate between the old and new lines of the street? An agreement whereby the buyer consented to an assignment of the awards to the seller was found as a fact to have been unknown to the mortgagee and, accordingly, it is not binding on appellant.

If the deed vested title in the Hurtjam Realty Corporation to the damage parcels, the mortgagee acquired a lien upon them and is entitled to the awards in satisfaction of its deficiency judgment. From the evidence throughout the case, the fact is patent that respondent

Yarm Realty and Holding Company, although originally intending to retain title to the damage parcels, eventually formed the intention to convey them to respondent Hurt-jam Realty Corporation. Without title to them, a buyer of the premises east of the proposed new street line would doubtless encounter many obstacles in an attempt to obtain a building loan on such premises. The possibility that the city might fail to carry its proceeding to completion was not unreasonably remote, and upon property with no access to the street the procurement of a loan would be practically impossible. Without a loan, the buyer would be embarassed in an effort to perform its contract to purchase and the owner might then be left holding title to land which it wished to sell. Counsel for the seller, respondent Yarm, concedes in his brief that such was the intention and that the new deed which was drawn by him was, at the time, thought by the parties to have the effect of describing and conveying property as running along the old easterly line and, therefore, including the damage parcels. Statements in that brief even suggest the possibility of a reformation of the deed and the mortgage, prior to foreclosure, by which the conceded intent of the parties might have been expressed. However, the argument is made that the language of the deed fails to express that intention. Not only did the intention exist, but we think that it has been expressed. The conveyance is of land which lies east of the proposed new line of the street and which abuts upon the area constituting part of the street as defined by the easterly line on the topographical map, " together with all right, title and interest in and to the land lying in the street, road or avenue as it *now* or formerly existed in front and adjoining said premises to the center lines thereof." To us the argument that the condemnation area was, at the time of the delivery of the deed, no part of any street " now " existing in front of the abutting

property seems unsound. It is true that, at the date of delivery, title to the new part of the highway had not yet vested in the city. The parties, however, were not contemplating the city's legal title to it. They were looking at and referring to the physical lines of a ground surface which both regarded for the purpose of that deed as part of Puntine street. The description in the deed refers to that street as " shown on the Final Tops. Map of the City of New York." Within the contemplation of the parties, as so expressed, there was a complete concurrence of view respecting the boundary of that tract which, at the time of delivery of the deed, constituted Puntine or One Hundred and Sixty-fifth street as shown on the map. It was all the land included within lines appearing on an official map to which reference was made in the instrument of conveyance. The parties intended it as a street, did not otherwise regard it, even called it a street, and accepted the name which the public authorities had given to it. (*Bissell* v. *N. Y. Central R. R. Co.*, 23 N. Y. 61.) Title to land does not pass by implication but here it has been conveyed by explicit expression.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and HUBBS, JJ., concur.

Ordered accordingly.