James C. O’Brien, J.
Very few facts are in dispute. Plaintiff owns some 25 acres of land in Irondequoit, lying just easterly of a subdivision known as Winton Village. He claims in this action that he owns also the beds of the various streets in the subdivision and certain irregularly shaped open spaces at street intersections shown on a map of the subdivision and there designated “ Park ”. Defendant Schantz Construction Corporation, hereinafter referred to as “ Schantz ”, has bought or is buying from defendant County of Monroe, hereinafter referred to as “ County ”, most of the numbered lots in this subdivision, which the County had acquired as the result of a tax foreclosure. The County and Schantz claim that they together own, and that plaintiff has no title to, either the beds of the streets or the so-called ‘‘ Parks ’’. This is the principal controversy.
Schantz, buying the lots from the County, has eliminated or proposes to eliminate certain roads as originally laid out on the map, and to relocate others. Moreover in improving some of the streets of the subdivision, Schantz has interfered temporarily and occasionally with the complete use of the various roads. It is to prevent these acts on the part of Schantz, as to roads which plaintiff claims to own, that plaintiff seeks an injunction.
I have concluded that the plaintiff is entitled to a judgment providing that he is entitled to an easement by implication over the part of Irondequoit Boulevard running west from plaintiff’s driveway and over other streets of the subdivision, continuing by the most direct routes to Empire Boulevard and Winton Road. Without such easement his home is practically inaccessible. Moreover his right to such easement is not disputed by- the defendants. The judgment may also provide that plaintiff is seized in fee of the easterly one half of the part of Irondequoit Boulevard which runs north and south. The remainder of plaintiff’s prayer is denied without costs to any party.
Some 40 years ago Myron C. Snyder, who was plaintiff’s father, inherited the 521/2 acres of land with which we are now *949 concerned. The westerly half of it, flat in character, eventually became Winton Village Subdivision, which is referred to hereinafter as “ Winton Village ”, or as the “ Subdivision ”. The easterly half of it, mostly hillside property, abuts Winton Village on the east and is the property which the plaintiff now owns. The plaintiff’s home is at the northerly end of this easterly half.
Plaintiff’s father, Myron C. Snyder, conveyed the whole 52% acres to one Summers. Summers gave back to Snyder a purchase-money mortgage and thereafter conveyed all the property to one Will. Will in turn conveyed it to Winton Village, Inc., which sold and conveyed a number of lots to purchasers who built houses in the Subdivision. Thereafter (1929) Snyder foreclosed the purchase-money mortgage which Summers had given him. As a result the whole 52% acres were conveyed by the referee to Myron 0. Snyder, with certain exceptions which included principally the lots which theretofore had been sold and released from the mortgage. Thereafter in 1931 Myron 0. Snyder and wife conveyed to the Winton Snyder Realty Corporation (sometimes referred to hereinafter as “ Corporation ”), of which he was sole stockholder, all the unsold lots in the tract, describing them by number with reference to the map of the subdivision which had been filed in Monroe County clerk’s office. In this deed to the corporation there is no specific mention of the bed of the streets in the Subdivision nor of the so-called “Park” areas. Myron C. Snyder and his wife both died intestate and plaintiff, their sole distributee, inherited the land of which they died seized. He claims that this land included the beds of the streets and the so-called Park areas.
I have come to the conclusion that the conveyance by Myron C. Snyder and his wife to the corporation of the lots by number, carried title to the center of the streets and the Park areas on which those lots abutted. When land is bounded by a street it is presumed that title conveyed extends to the center of the street. (Bissell v. New York Central R. R. Co., 23 N. Y. 61.) This presumption does not operate where the description of the property conveyed runs along the side of a street plainly excluding the fee in the roadbed (Kings County Fire Ins. Co. v. Stevens, 87 N. Y. 287; Matter of City of New York [165th St.], 258 N. Y. 42) or where an express provision in the deed shows that the highway was not intended to be conveyed (Van Winkle v. Van Winkle, 184 N. Y. 193; White’s Bank of Buffalo v. Nichols, 64 N. Y. 65); also in a case where public authorities are the grantors (Graham v. Stern, 168 N. Y. 517; Dunham v. *950 Williams, 37 N. Y. 251) and own the street, and where the grantor, himself, does not own the fee of the street (Nemet v. Edgemere Garage & Sales Co., 73 N. Y. S. 2d 921, 924). It is true also that the presumption that the title extends to the center line of the street, under certain circumstances, may be rebutted. (White’s Bank of Buffalo v. Nichols, 64 N. Y. 65, supra; Tietjen v. Palmer, 121 App. Div. 233.) Also in a proper case some additional evidence may be admitted to explain the deed or the surrounding circumstances or the situation of the parties (Haberman v. Baker, 128 N. Y. 253). However, such evidence is admissible only where the language of the deed is susceptible of more than one interpretation. When the deed is complete and unambiguous all other evidence is excluded. (Loch Sheldrake Associates v. Evans, 306 N. Y. 297, 304, 305; Uihlein v. Matthews, 172 N. Y. 154, 159; Blackman v. Riley, 138 N. Y. 318; Armstrong v. Du Bois, 90 N. Y. 95.)
It is well settled that where a conveyance describes property as a numbered lot, referring to a map upon which the lot appears, the conveyance includes the fee to the center of the street on which the lot abuts, unless expressly reserved. (Fiebelkorn v. Rogacki, 280 App. Div. 20, affd. 305 N. Y. 725; Johnson v. Grenell, 188 N. Y. 407; Hennessy v. Murdock, 137 N. Y. 317, 323; Bissell v. New York Central R. R. Co., 23 N. Y. 61, supra; Goulding v. Town of Tonawanda, 282 App. Div. 321; Nemet v. Edgemere Garage & Sales Co., 73 N. Y. S. 2d 921, 924, supra.) Such construction of a deed has so long prevailed that it has now become a rule of property (Hennessy v. Murdock, 137 N. Y. 317, 323, supra).
Plaintiff calls our attention to certain evidence outside the conveyance, viz.: the oral testimony of Mr. Bly as to the advice which he gave to the plaintiff’s father before the latter conveyed to the corporation, and the difference in the description employed in the various deeds, viz.: the deed by which the referee conveyed to plaintiff’s father and the deed by which plaintiff’s father conveyed to the corporation. As to Mr. Bly’s testimony we feel that it cannot be considered under the authorities already cited. However, if it were considered, we do not feel that that testimony and the difference in the two deeds would be sufficient to justify a different conclusion.
Also we feel that for all the purposes involved in this case the small areas at street intersections referred to as “ Parks ” are to be treated the same as streets. (Perrin v. New York Central R. R. Co., 36 N. Y. 120.)
While the corporation held title to certain numbered lots in the tract, which, as has already been stated, in our opinion *951 included the beds of the streets on which the said lots abutted, the taxes on the corporation’s lands in the subdivision became delinquent with the result that the County of Monroe by action foreclosed the tax liens. On the tax rolls the beds of the streets in the subdivision were not specifically mentioned nor were the park areas. The lots were assessed by lot number. Whether or not under those circumstances the lien of the unpaid taxes extended to the part of the streets and the parks upon which the lots abutted, is an interesting question. The excellent and very voluminous briefs with which counsel for all the parties have supplied the court have not uncovered a single case which is determinative of this question, nor has the court, itself, found one. The description of property on a tax roll must be sufficient to fairly advise the person assessed that his property is being taxed and sufficient to enable a purchaser at a tax sale to determine what property is being offered and acquired on the sale. (Fulton v. Krull, 200 N. Y. 105, 110; McDonogh v. Smith, 277 App. Div. 1087; Griffin v. City of Syracuse, 179 Misc. 250, affd. 266 App. Div. 1055; Dillwood Corp. v. Manning, 184 Misc. 1067.) It would seem that since the description in a deed of a numbered lot abutting on a street is sufficient to pass title to the center of the street upon which the lot abuts, the same description on an assessment roll should be sufficient also to include one half of such street. Accordingly it would seem that at the time the county’s tax foreclosure occurred, the corporation owned, and the taxes were a lien upon, the part of the bed of the streets in front of the numbered lots. If this conclusion be correct, the judgment and resulting sale in the tax foreclosure action effectively passed to the County of Monroe title to the Park areas and such parts of the streets.
It is noted that in the tax foreclosure action the County included this plaintiff as one of the defendants. In the lis pendens and complaint the County claimed and alleged that its tax liens included the various numbered lots described in the lis pendens as well as “ all the right * * * title and interest in and to the land lying in the bed of any street * * * included in, in front of or adjoining the lots and premises herein described”. The complaint alleges that the record owner of the beds of the streets and the Park areas is Myron C, Snyder (plaintiff’s father), and that Myron S. Snyder (plaintiff herein) inherited by intestate succession any real property of which his father died seized. The complaint goes on to allege that all of the defendants have some claim or interest in, or lien upon, some part of the premises described in the complaint, which the plaintiff alleges is subordinate to its lien. *952 Judgment was demanded that the plaintiff be adjudged to have valid tax liens on all the premises described and that the court adjust and determine the “ several interests and equities of all the parties to this action ”, The summons and complaint in that action were personally served upon Myron S. Snyder. He appeared in the action, defaulted and consented that judgment be entered therein. Judgment was entered and the premises described in the complaint, lis pendens and judgment were thereafter sold and deeded to the County.
Under these circumstances it seems clear that the plaintiff is bound by that judgment and is now precluded and foreclosed from collaterally attacking it. (Jordan v. Van Epps, 85 N. Y. 427; Patrick v. Shaffer, 94 N. Y. 423; Jacobie v. Mickle, 144 N. Y. 237.) That judgment was effective to pass to the County of Monroe title to the Park areas and the parts of the streets in the tract lying in front of the numbered lots specifically enumerated in the tax roll. There were no lots fronting on the easterly side of Irondequoit Boulevard, one of the streets in the tract. Accordingly the deed to the corporation conveyed only the westerly half of Irondequoit Boulevard. As a result the easterly 33 feet of the Boulevard were retained by plaintiff’s father and passed to plaintiff by intestate succession. Nor is this result affected by the delinquent taxes and the foreclosure of the resulting liens. What the County asked in its tax foreclosure action, as I read the complaint, was the sale of the part of the streets or roads in the subdivision upon which the lots abutted. In the case of Irondequoit Boulevard I construe this to mean the westerly only, and not the easterly half.
There is an additional reason why plaintiff cannot now successfully attack the judgment in the tax foreclosure action. There is in chapter 440 of the Laws of 1938 (Monroe County Tax Foreclosure Act, § 13) a provision that such an action must be commenced within one year after the filing of the order of confirmation (entered Dec., 1942).
The amended contract between Schantz and the County is not, as plaintiff claims, an admission on the part of the County that it does not have title to any part of the streets. In the contract the County does not state that it does not have any title to the streets. What it does state is that it never represented to the purchaser (Schantz) that it had such title. This is an obvious attempt to preclude Schantz from holding the County for damages in the event that plaintiff should be able to establish title to the streets. The contract is an attempt on the part of the County to secure a release from Schantz. The County previously had contracted to sell to Schantz all the *953 unsold lots in the whole subdivision for a price which it regarded as little more than nominal. Subsequently the plaintiff commenced this lawsuit against both Schantz and the County. It was natural and understandable that then the County should protect itself as best it could against any claim by Schantz. This is the whole purpose of Exhibit 24. Plaintiff is not a party to the contract nor is plaintiff a beneficiary of that contract under any legal theory with which we are familiar. (Walrath v. Redfield, 18 N. Y. 457; Lawrence v. Fox, 20 N. Y. 268; Seaver v. Ransom, 224 N. Y. 233; Little v. Banks, 85 N. Y. 258.)
The northerly end of plaintiff’s property where his house is located currently has access to Empire Boulevard and Winton Road, westerly, over streets of the subdivision by the most direct route. These streets include the part of Irondequoit Boulevard which runs east and west. Defendants make no objection to such use by the plaintiff for the benefit of his land and such use may be continued. We have concluded that so long as such access at the northerly part of plaintiff’s property to and from public roads is available, he has not shown facts which require or justify any other implied easement in favor of his land, over any other part of the subdivision. (Matter of Smith v. Gagliardi, 2 Misc 2d 1005; Katonah Lumber, Coal & Feed Co. v. State of New York, 194 Misc. 311.) Concededly there was no express reservation by plaintiff’s father of any easement or right of way across the subdivision lands when he conveyed to the corporation. Also it is noted that plaintiff’s father did not retain, nor does plaintiff own, any lot or parcel of land in the tract for the benefit of which there would be an implied easement to use certain of the roads in the subdivision. (Wilkinson v. Nassau Shores, 1 Misc 2d 917, affd. 278 App. Div. 970, mod. 304 N. Y. 614.) There has been no such open, hostile and long continued use as to constitute an easement by prescription. It is true that at the time of the severance of the two parcels (tenements) by the conveyance by plaintiff’s father to the corporation, he did occasionally drive across the subdivision lands to or from part of the property which lies south of plaintiff’s present home. However, I am unable to conclude that such use should constitute a burden upon the lands of the subdivision. It was at most a convenience and not such a necessity as would justify imposing on the subdivision a permanent burden in favor of the plaintiff’s property. (Wells v. Garbuti, 132 N. Y. 430; Root v. Wadhams, 107 N. Y. 384; Sabatino v. Vacarelli, 35 N. Y. S. 2d 635, affd. 264 App. Div. 742.) Parenthetically it might be mentioned that evidence as to what was done by plaintiff’s father or his *954 predecessors in title long prior to the conveyance to the corporation, is immaterial for onr purposes. Plaintiff’s father could not very well have an easement over his own property. Any easement which had existed previous to that time was wiped out upon the subsequent uniting of the title in one person and ordinarily would not be renewed unless at the time of the subsequent severance, language was used in the conveyance which made plain an intent to recreate the easement de novo, as in Swesey v. Berry (143 Mise. 372). Generally speaking, when a grantor intends to reserve any rights over land which he conveys, he must say so in his deed. {Smith v. New York Central R. R. Co., 235 App. Div. 262; Wells v. Garhutt, 132 N. Y. 430, supra.) It is true that there is an exception to this rule in a case where these is no access possible to the retained land except by passing over the land conveyed. Even in such case to make out an easement the burden must be open and continuous and absolutely necessary, especially when there is an implied reservation.
It is true that in the plaintiff’s land there are included two, or perhaps three, small plateaus of level land which might be suitable for building purposes and that access to them could be more conveniently had across the lands of the subdivision than over plaintiff’s own property. However, this is a matter of convenience only and not even reasonable necessity and no easement for their benefit will be implied,
. Another difficulty confronts the plaintiff. In July, 1954 at a public hearing of the Irondequoit Planning Board, where there was brought up by Schantz for approval, a resubdivision map of the subdivision, plaintiff was present. After some discussion with the attorney for Schantz, plaintiff orally agreed that if there were allotted to him the easterly 33 feet (one half) of the part of the Boulevard running north and south, he would make no other claims, and further that the center line of such part of the Boulevard would then be the boundary line between his property and that of Schantz. Since this oral understanding never ripened into a writing, it obviously is not binding on either. However, in reliance upon it, Schantz changed his position substantially. He expended a very considerable sum of money in constructing improvements, including new streets, in selling lots and building new houses. It was not until May or June of 1955 that Schantz learned for the first time that plaintiff would not put this agreement into writing. Thereafter in July, 1955 this action was commenced. Under the circumstances, because of the extent to which Schantz has changed his position, it would seem inequitable to grant further relief *955 to the plaintiff. (See 43 C. J. S., Injunctions, § 171; University Gardens Property Owners Assn. v. Schultz, 272 App. Div. 949.)
I cannot agree that the streets in the subdivision have been dedicated and accepted for public use, as plaintiff contends. Ooncededly there has been no resolution or other formal action on the part of the Irondequoit Town Board which wóuld constitute acceptance. Nor is there sufficient evidence of user to constitute acceptance by the public authorities. (Village of East Rochester v. Rochester Gas & Elec. Corp., 289 N. Y. 391; Johnson v. City of Niagara Falls, 230 N. Y. 77; Feuer v. Brenning, 201 Misc. 792, affd. 279 App. Div. 1033, affd. 304 N. Y. 881; People v. Brooklyn & Queens Tr. Corp., 273 N. Y. 394; People v. Sutherland, 252 N. Y. 86; People v. Underhill, 144 N. Y. 316; Matter of Wallace Ave., 222 N. Y. 139; Speir v. Town of New Utrecht, 121 N. Y. 420.)
The case cited by plaintiff, viz.: Matter of Hunter (163 N. Y. 542) is distinguishable. In that case there was a definite and positive assertion by the council of the City of Albany, of ownership in and dominion over the road. In an ordinance by which there was authorized the construction therein of a sewer, the street was referred to as a public street.
Counsel for one of the parties will submit a decree in accordance herewith, approved as to form by counsel for the other parties. If such approval cannot be secured form of decree may be settled on five days’ written notice.
The foregoing is my written decision made, signed and filed pursuant to section 440 of the Civil Practice Act.